### UNITED STATES DISTRICT COURT FOR THE
### SOUTHERN DISTRICT OF NEW YORK

———————————————————————

Gary A. Hebda and Deborah L. Hebda,

               Plaintiffs,

      vs.

Davis Selected Advisers, L.P., and
Davis Selected Advisers-NY, Inc.,

              Defendants.

———————————————————————

1:14-cv-4318 (LTS) (HBP)

**ORAL ARGUMENT REQUESTED**

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

Joanna A. Diakos
**K&L Gates LLP**
599 Lexington Ave.
New York, NY 10022
Tel:    (212) 536-3900
Fax:    (212) 536-3901
Email: joanna.diakos@klgates.com

Stephen G. Topetzes (*pro hac vice* forthcoming)
Jeffrey B. Maletta (*pro hac vice* forthcoming)
Nicholas G. Terris (application pending)
Nicole A. Baker (*pro hac vice* forthcoming)
Amy J. Eldridge (*pro hac vice* forthcoming)
**K&L Gates LLP**
1601 K Street NW
Washington, D.C. 20006
Tel:    (202) 778-9000
Fax:    (202) 778-9100
Email: stephen.topetzes@klgates.com
       jeffrey.maletta@klages.com
       nicholas.terris@klgates.com
       nicole.baker@klgates.com
       amy.eldridge@klgates.com

*Attorneys for Davis Selected Advisers, L.P., and Davis Selected Advisers-NY, Inc.*

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ...........................................................................................1

STANDARD FOR MOTION TO DISMISS ...................................................................3

BACKGROUND .............................................................................................................4

ARGUMENT ..................................................................................................................9

9I.     THE TURNER DISMISSAL PRECLUDES THIS ACTION .......................................9

II.     THE COMPLAINT FAILS TO STATE A § 36(b) CLAIM ......................................11

     A.     Plaintiffs' Comparative Fee Allegations Are Inapt and Insufficient
to State a Claim ...................................................................................................12

          1.     Advisory Fees and Subadvisory Fees are not Comparable.......................12

          2.     Plaintiffs' Inapt Fee Comparison is Insufficient on Its Own Terms..........16

     B.     Plaintiffs' Allegations Regarding the Fund's Recent Underperformance
are of Limited Relevance and Ignore Davis's Long-Term Track Record ............18

     C.     Plaintiffs' Allegations Regarding the Directors are Irrelevant and
Meritless.............................................................................................................20

III.     PLAINTIFFS' SECTION 47(b) CLAIM MUST BE DISMISSED ................................24

CONCLUSION..............................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Acticon AG v. China North East Petroleum Holdings Ltd.,
    692 F.3d 34 (2d Cir. 2012).................................................................... 4

AmBase Corp. v. City Investing Co. Liquidating Trust,
    326 F.3d 63 (2d Cir. 2003).................................................................... 4

Amron v. Morgan Stanley Inv. Advisors, Inc.,
    464 F.3d 338 (2d Cir. 2006)........................................................ *passim*

Arduini ex rel. Int'l Game Tech. v. Hart,
    No. 3:11-cv-255-ECR-VPC, 2012 WL 893874 (D. Nev. Mar. 14, 2012)...................... 10

Ashare v. Brill,
    560 F. Supp. 18 (S.D.N.Y. 1983)........................................................ 11

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)................................................................ 3-4, 18, 23

ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.,
    493 F.3d 87 (2d Cir. 2007).................................................................... 4

Bellikoff v. Eaton Vance Corp.,
    481 F.3d 110 (2d Cir. 2007)................................................................ 14

Benjamin v. Coughlin,
    905 F.2d 571 (2d Cir. 1990)................................................................ 10

Daily Income Fund, Inc. v. Fox,
    464 U.S. 523 (1984).......................................................................... 16

Fiero v. Fin. Indus. Regulatory Auth., Inc.,
    660 F.3d 569 (2d Cir. 2011)................................................................ 20

Gallus v. Ameriprise Fin., Inc.,
    675 F.3d 1173 (8th Cir. 2012) ...................................................... 18, 20-21

Gartenberg v. Merrill Lynch Asset Mgmt.
    528 F. Supp. 1038 (S.D.N.Y. 1981)...................................................... 16

Gartenberg v. Merrill Lynch Asset Mgmt., Inc.,
    694 F.2d 923 (2d Cir. 1982)........................................................ 1, 13, 23-24

Gartenberg v. Merrill Lynch Assets Mgmt.,
573 F. Supp. 1293 (S.D.N.Y. 1983) aff'd sub nom. Gartenberg v. Merrill Lynch
Asset Mgmt., Inc., 740 F.2d 190 (2d Cir. 1984)...........................................................9-10

Givens v. N.Y.C.,
No. 11-civ-2568 (PKC)(JCF), 2012 WL 75027 (S.D.N.Y. Jan. 10, 2012) ...................... 10

Green v. Nuveen Advisory Corp.,
295 F.3d 738 (7th Cir. 2002) ......................................................................................... 23

Hamilton v. Allen,
396 F. Supp. 2d 545 (E.D. Pa. 2005) .............................................................................. 24

Henik ex rel. LaBranche & Co., Inc. v. LaBranche,
433 F. Supp. 2d 372 (S.D.N.Y. 2006)....................................................................... 10, 11

Hoffman v. UBS-AG,
591 F. Supp. 2d 522 (S.D.N.Y. 2008).............................................................................. 13

In re AllianceBernstein Mut. Fund Excessive Fee Litigation,
No. 04-Civ. 4885 (SWK), 2006 WL 1520222 (S.D.N.Y. May 31, 2006)................. 12, 14

In re Bed Bath & Beyond Inc. Deriv. Litig.,
Civil Action No. 06-5107 (JAP), 2007 WL 4165389 (D. N.J. Nov. 19, 2007)............... 10

In re Davis Selected Mut. Funds Litig.,
No. 04-cv-4186 (MGC), 2005 WL 2509732 (S.D.N.Y. Oct. 11, 2005)........................... 8

In re Franklin Mut. Funds Fee Litigation,
478 F. Supp. 2d 677 (D. N.J. 2007) ................................................................................ 12

In re Scudder Mut. Funds Fee Litig.,
No. 04 Civ. 1921 (DAB), 2007 WL 2325862 (S.D.N.Y. Aug. 14, 2007) ....................... 23

In re Sonus Networks, Inc. S'holder Deriv. Litig.,
499 F.3d 47 (1st Cir. 2007)............................................................................................. 10

Jones v. Harris Assoc. L.P.,
559 U.S. 335 (2010)..............................................................................................*passim*

Kaplan v. Bennett,
465 F. Supp. 555 (S.D.N.Y. 1979).................................................................................. 11

Krantz v. Prudential Invs. Fund Mgmt. LLC,
305 F.3d 140 (3d Cir. 2002)............................................................................................ 11

Krinsk v. Fund Asset Mgmt., Inc.,
875 F.2d 404 (2d Cir. 1989)..................................................................................... 16, 24

iv

Lanza v. Drexel & Co.,
    479 F.2d 1277 (2d Cir. 1973)..................................................... 22

LeBoyer v. Greenspan,
    No. CV 03-5603-GHK (JTLx), 2007 WL 4287646 (C.D. Cal. June 13, 2007) ............... 10

Lerner v. Reserve Mgmt. Co.,
    No. 80 Civ. 1238, 1981 WL 1641 (S.D.N.Y. June 17, 1981)......................... 10

Migdal v. Rowe Price-Fleming Int'l, Inc.,
    248 F.3d 321 (4th Cir. 2001) ..................................................... *passim*

Mintz v. Baron,
    No. 05 Civ. 4904 (LTS), 2009 WL 735140 (S.D.N.Y. Mar. 20, 2009).................... 2, 4, 12

Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt.,
    595 F.3d 86 (2d Cir. 2010)....................................................... 11

Papilsky v. Berndt,
    466 F.2d 251 (2d Cir. 1972)...................................................... 11

Petrella v. Siegel,
    843 F.2d 87 (2d Cir. 1988)....................................................... 9

Purdy v. Zeldes,
    337 F.3d 253 (2d Cir. 2003)...................................................... 9

Roth v. Jennings,
    489 F.3d 499 (2d Cir. 2007)...................................................... 4

Santomenno v. John Hancock Life Ins. Co.,
    677 F. 3d 178 (3d Cir. 2012)..................................................... 24

Staehr v. Hartford Fin. Servs. Group, Inc.,
    547 F.3d 406 (2d Cir. 2008)...................................................... 4

Steinberg v. Janus Capital Mgmt. LLC,
    457 Fed. App'x. 261 (4th Cir. Dec. 2, 2011) ..................................... 24

Stone ex rel. AmSouth Bancorporation v. Ritter,
    911 A.2d 362 (Del. 2006) ........................................................ 21

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
    551 U.S. 308 (2007).............................................................. 4

Turner v. Davis Select Advisers, L.P.,
    Civ. No. 08-421 (D. Ariz. June 1, 2011), ECF No. 80 ............................. *passim*

United States. v. Nysco Labs., Inc.,
    318 F.2d 817 (2d Cir. 1963) ........................................................................ 9

United States v. Intn'l Board. Of Teamsters,
    905 F.2d 610 (2d Cir. 1990) ........................................................................ 9

Yameen v. Eaton Vance Distributors, Inc.,
    394 F. Supp. 2d 350 (D. Mass. 2005) ....................................................... 12

**STATUTES**

15 U.S.C. § 77o(a) .......................................................................................... 14

15 U.S.C. § 78t(a) ........................................................................................... 14

15 U.S.C. §§ 80a-1 et seq ................................................................................ 1

15 U.S.C. § 80a-2(a)(19)(B) ............................................................................ 4

15 U.S.C. § 80a-6(c) ...................................................................................... 15

15 U.S.C. § 80a-15(c) ..................................................................................... 22

15 U.S.C. § 80a-35(b) ("Section 36(b)") ................................................. passim

15 U.S.C. § 80a-41 ......................................................................................... 14

15 U.S.C. § 80a-46(b) ................................................................................. 9, 24

15 U.S.C. § 80a-47(a) ..................................................................................... 14

15 U.S.C. § 80a-205(b) ................................................................................... 24

**RULES**

17 C.F.R. § 270.38a-1(a)(4) ............................................................................ 14

17 C.F.R. §§ 275.205-1, 205-2 ........................................................................ 24

Fed. R. Civ. P. 12(b)(6) ............................................................................ passim

Fed. R. Civ. P. 59(e) ........................................................................................ 8

## OTHER AUTHORITIES

Goodman v. J.P. Morgan Inv. Mgmt., Inc.,
    No. 2:14-cv-414 (S.D. Ohio filed May 5, 2014).................................................. 1

In re BlackRock Mutual Funds Advisory Fee Litig.,
    3:14-cv-01165 (D.N.J. filed Feb. 21, 2014)....................................................... 1

Zehrer v. Harbor Capital Advisors, Inc.,
    No. 1:14-cv-00789 (N.D. Ill. filed Feb. 4, 2014)............................................... 1

In re Exemption from Shareholder Approval for Certain Subadvisory Contracts,
    Release No. 48683, Release No. 33-8312, Release No. 34-48683, Release No. IC
    - 26230, 81 S.E.C. Docket 939, 2003 WL 22423216 (Oct. 23, 2003)............................. 15

Manufacturers Investment Trust and Manufacturers Securities Services, LLC,
    Investment Co. Act Release No. 24226, 65 FED. REG. 797 (Dec. 29, 1999)................... 15

USAllianz Variable Insurance Products Trust and USAllianz Advisers, LLC,
    Investment Co. Act Release No 25715, 67 FED. REG. 167, 55286 (Aug. 28, 2002) ........ 15

USAllianz Variable Insurance Products Trust,
    Supplement (Form 497) (filed Sept. 23, 2002)................................................ 15

Invesco, SEC No-Action Letter,
    No. 97-198-CC, 1997 WL 434442 (Aug. 5, 1997).......................................... 15

Wells Fargo, N.A., SEC No-Action Letter,
    1998 WL 146223 (Mar. 31, 1998)......................................................... 15

IM Guidance Update No. 2014-03 (Feb. 2014), available at
    http://www.sec.gov/divisions/investment/guidance/im-guidance-2014-03.pdf
    (last accessed August 13, 2014)........................................................ 15

"Mutual Funds," at
    http://www.finra.org/Investors/SmartInvesting/ChoosingInvestments/MutualFund
    s  (last accessed August 13, 2014) ................................................... 20

Defendants Davis Selected Advisers, L.P. ("Davis"), the investment adviser to the Davis New York Venture Fund (the "Fund"), and Davis Selected Advisers-NY, Inc. ("Davis-NY"), the Fund's subadviser, respectfully submit this Memorandum of Law in Support of their Motion to Dismiss the Complaint (the "Complaint" or "Compl.").

## PRELIMINARY STATEMENT

Section 36(b) of the Investment Company Act of 1940, 15 U.S.C. §§ 80a-1 et seq., ("ICA"), provides a limited remedy for a shareholder-plaintiff who can meet the difficult burden of showing that her mutual fund's investment adviser charged a fee that "is so disproportionately large that it bears no reasonable relationship to the services rendered **and** could not have been the product of arm's-length bargaining." Jones v. Harris Assoc. L.P., 559 U.S. 335, 351 (2010) (emphasis added) (adopting standard from Gartenberg v. Merrill Lynch Asset Mgmt., Inc., 694 F.2d 923, 928 (2d Cir. 1982)).  Despite this daunting standard, plaintiffs have an incentive to bring "a largely groundless" § 36(b) action based on its "in terrorem" effect. Amron v. Morgan Stanley Inv. Advisors Inc., 464 F.3d 338, 346 (2d Cir. 2006) (affirming 12(b)(6) dismissal).  The case at bar is another example of this tactic.

This case is part of a wave of similar § 36(b) lawsuits against different mutual fund advisers.[1]  It is also the third meritless § 36(b) case brought against Davis within the past decade.  Plaintiffs this time primarily allege that the fees Davis charges the Fund for services as an investment adviser are legally excessive because they are higher than the fees Davis charges as a subadviser to other mutual funds managed by other financial institutions (the "Subadvised Funds").  The Complaint also asserts that: (i) the Fund has recently underperformed its

---

[1]      See, e.g., Zehrer v. Harbor Capital Advisors, Inc., No. 1:14-cv-00789 (N.D. Ill. filed Feb. 4, 2014); In re BlackRock Mutual Funds Advisory Fee Litig., 3:14-cv-01165 (D.N.J. filed Feb. 21, 2014); Goodman v. J.P. Morgan Inv. Mgmt., Inc., No. 2:14-cv-414 (S.D. Ohio filed May 5, 2014).

benchmark index and peer funds, and certain of the Subadvised Funds terminated Davis as subadviser for underperformance; and (ii) the Fund's independent directors were insufficiently conscientious or careful mainly because they did not sever the Fund's relationship with Davis and because their Board service is a "part-time" job.

The Complaint should be dismissed with prejudice for two independent reasons.

First, this action is precluded by the Rule 12(b)(6) dismissal in Turner v. Davis Selected Advisers, L.P., Civ. No. 08-421 (D. Ariz. June 1, 2011), one of the prior unsuccessful § 36(b) cases against Davis. The Turner court rejected allegations similar to those raised here regarding the Fund's performance and directors, as well as comparisons between the Fund's fees and those of supposedly comparable mutual funds. Because the advisory fee schedule is no higher than in Turner, and § 36(b) is a derivative claim, Turner supports issue preclusion against Plaintiffs in this case. The additional fee comparisons Plaintiffs propose here cannot defeat preclusion because they are based on information that was available to the plaintiff in Turner.

Second, the complaint fails to satisfy this Circuit's rigorous approach to enforcing the pleading standards in § 36(b) cases. See Mintz v. Baron, No. 05 Civ. 4904 (LTS), 2009 WL 735140, at *2 (S.D.N.Y. Mar. 20, 2009).

Plaintiffs base their claim principally on comparisons of the fees that Davis charges financial institutions to serve as a *subadviser* with the fees it charges the Fund to serve as the *investment adviser*. These apples-to-oranges comparisons have no probative value as the two roles are fundamentally different. And, while Plaintiffs and their counsel appear to object broadly to the adviser-subadviser management structure for mutual funds, the SEC is well aware of, and has repeatedly approved, this arrangement.

Even assuming Plaintiffs' advisory/subadvisory fee comparison was probative, it would be insufficient here because, as reflected in materials of which the Court may readily take notice:

- The Fund pays essentially the same advisory fee as another mutual fund that replaced its prior investment adviser with Davis.  This demonstrates that the Fund's fee is within the arm's-length range.

- The Fund's advisory fee is low compared to that of similar funds managed by other advisers, as Morningstar and the <u>Turner</u> court both recognized.

- <u>Jones</u> holds that a § 36(b) plaintiff must plead cognizable facts other than a fee comparison with an adviser's non-mutual fund clients.  The Complaint fails to do so.

Allegations that the Fund has underperformed do not salvage the Complaint.  The Second Circuit in <u>Amron</u> and other courts have held that underperformance allegations such as Plaintiffs' are entitled to almost no weight.  <u>Amron v. Morgan Stanley Inv. Advisors Inc.</u>, 464 F.3d 338 (2d Cir. 2006).  Moreover, while Plaintiffs focus on the Fund's short-term performance, they allege nothing regarding the Fund's extraordinary long-term track record.

The Complaint's allegation that the directors were "part-time" adds nothing.  It is merely a pejorative characterization of the ICA's cornerstone requirement that a mutual fund board be comprised largely of independent directors.  Plaintiffs' assertions that the Board lacked independence and diligence and that it should have refused to renew the contract are circular boilerplate, and whether a board should renew an advisory contract is beyond the narrow scope of § 36(b).

Plaintiffs' § 47(b) claim fails for multiple reasons that require no extended discussion.

## STANDARD FOR MOTION TO DISMISS

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (internal quotation omitted).  "[C]onclusory statements" are "not entitled to

the assumption of truth." Id. at 678, 679.  And the pleaded facts must be more than "merely

consistent with a defendant's liability"; they must "allow[] the court to draw the reasonable

inference that the defendant is liable." (internal marks omitted)  Id. at 678.

On motions to dismiss, courts appropriately review "documents incorporated into the

complaint by reference, and matters of which a court may take judicial notice."  Tellabs, Inc. v.

Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (on a motion to dismiss).  Here, those

documents include prospectuses, statements of additional information ("SAIs"), Morningstar

data, and investment management agreements.[2]  These materials are attached as exhibits to the

Declaration of Stephen G. Topetzes ("Declaration" or "Decl."), filed as part of this motion.

## BACKGROUND

### The Parties

Plaintiffs allegedly are Fund shareholders.  Compl. ¶ 14.

The Fund is a mutual fund that is a series of an investment company registered under the

ICA and organized under Maryland law.  Compl. ¶¶ 14, 17-20.  A board of directors ("Board")

oversees the Fund.  Compl. ¶ 24.  Six of the eight directors are independent (they are not

"interested persons" of Davis or the Fund under the ICA).[3]  See 15 U.S.C. § 80a-2(a)(19)(B).

Defendants Davis and Davis-NY are investment advisers registered under the Investment

Advisers Act of 1940.  Compl. ¶¶ 15-16; Decl. Ex. A at 251.  As is typical in the fund industry,

---

[2]      See also Mintz v. Baron, No. 05 Civ. 4904 (LTS), 2009 WL 735140, at *3 n.3 (S.D.N.Y. Mar. 20, 2009) (§ 36(b) case) (judicially noticing SEC filings showing new investment inflows in the subject mutual fund); Staehr v. Hartford Fin. Servs. Group, Inc., 547 F.3d 406, 424-26 (2d Cir. 2008) (media reports and regulatory filings); Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (SEC filings and other public records; "no serious question as to their authenticity can exist") (internal citations omitted); ATSI Comm'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (similar; also "documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."); Acticon AG v. China North East Petroleum Holdings Ltd., 692 F.3d 34, 37, n.1 (2d Cir. 2012) (well-publicized stock prices); AmBase Corp. v. City Investing Co. Liquidating Trust, 326 F.3d 63, 72 (2d Cir. 2003) (court records to consider res judicata).

[3]      See Declaration Ex. A ("2013 Form N-1A") at 131-33.

see Jones v. Harris, 559 U.S. 335, 338 (2010), Davis serves as the Fund's investment adviser pursuant to an investment advisory agreement (the "Advisory Agreement").  See Compl. ¶ 26; Decl. Ex. C.  Davis-NY serves as the Fund's subadviser pursuant to a separate subadvisory agreement ("Subadvisory Agreement"), the costs of which are borne by Davis.  See Compl. ¶ 26; Decl. Ex. C, ¶ 2; Decl. Ex. D ¶¶ 1, 10; Decl. Ex. B at 139.

Davis (directly and through Davis-NY) provides management and investment advice, performs managerial duties, furnishes statistical, executive and clerical personnel, and provides bookkeeping, office space, and equipment.  Decl. Ex. C, ¶¶ 1, 3, 5; Decl. Ex. D ¶¶ 1, 6.  All of the Fund's officers and its two management directors are Davis employees.  See Decl. Ex. B at 236-37.

**The Subadvised Funds and Davis's Other Investment Company Clients**

The Complaint alleges that Davis served or serves as a subadviser to other clients, including the six Subadvised Funds, which have investment objectives similar to that of the Fund.  Compl. ¶¶ 45-65.

The Subadvised Funds are sponsored and managed by financial institutions (such as insurance companies that offer mutual funds in connection with their life insurance or retirement products) that are unaffiliated with Davis.  Compl. ¶¶ 46-49.  Each of these financial institutions, in its role as investment adviser, receives an investment advisory fee from the Subadvised Fund that it advises.  Compl. ¶ 53.  Each financial institution then enters into a "subadvisory agreement" with Davis to invest the assets of a Subadvised Fund, and pays Davis a portion of the advisory fee the financial institution receives from the Subadvised Fund.  Compl. ¶¶ 54-55.  In each case, Davis provides its subadvisory services under the supervision of the financial

institution, which has ultimate responsibility as the investment adviser to each of the Subadvised Funds.  See, e.g., Compl. ¶ 53; Decl. Exs. E-J.

As the public record reveals, Davis also serves as investment adviser to two other investment companies not identified in the Complaint, the Clipper Fund, Inc. ("Clipper Fund"), and Selected American Shares, Inc. ("Selected Funds").  See Decl. Exs. K-N.

Davis replaced the Clipper Fund's prior adviser on January 1, 2006.  Decl. Ex. O.  In 2005, Clipper Fund's investment adviser lost key personnel and underwent a reorganization, resulting in the search for a new adviser.  Decl. Ex. P.  Clipper Fund's board examined various options and, rather than continue with its reorganized adviser, selected Davis to take over as the investment adviser of the Clipper Fund effective January 1, 2006.  Decl. Ex. O.  Davis was unaffiliated with the Clipper Fund prior to its appointment as the Fund's adviser in 2006.  Decl. Ex. Q at 4 (identifying the adviser).

**Comparative Fees**

Plaintiffs allege the fees that Davis "receives (or received) for providing investment advisory services to the Subadvised Funds are lower than the fees paid by the Fund for the same or substantially the same services."  Compl. ¶ 68.

However, the *investment advisory fee* the Fund pays Davis as investment adviser is *lower* than the *investment advisory fees* that the Subadvised Funds pay their own investment advisers:

| Fund | Effective Fee Rate |
|---|---|
| Davis New York Venture Fund | 0.50%[4] |
| John Hancock Fundamental Value Trust | 0.75% for 2013.[5] |

---

[4]    Decl. Ex. A at 142; Decl. Ex. R. at 31.

[5]    Decl. Ex. S at 3.

| EQ/Davis New York Venture Portfolio | 0. 90%[6] |
| ING Davis New York Venture Portfolio | 0.75%[7] |
| AZL Davis New York Venture Fund | 0.70%[8] |
| MetLife Davis Venture Portfolio | 0.67%[9] |
| Columbia Variable Portfolio | 0.690%[10] |

Moreover, the Fund's advisory fee schedule and effective advisory fee rate are nearly identical to those of the Clipper Fund and Selected Funds for which Davis also serves as investment adviser. See Decl. Exs. K-N.

Morningstar also ranks the Fund's fees as "low"[11] compared to those of its peers.

**The Fund's Performance**

Relying on selected Morningstar data, the Complaint alleges that the Fund has recently underperformed its benchmark index and comparable funds.  Compl. ¶¶ 78-90.

But the Fund outperformed its benchmark and comparable funds in 2013.  See Decl. Ex. AA.[12]

---

[6]      Decl. Ex. T at 3.

[7]      Decl. Ex. U at 2.

[8]      Decl. Ex. V at 3.  See also Decl. Ex. W.

[9]      Decl. Ex. X at 3, 9, 10.

[10]      Decl. Ex. Y at 3.

[11]      Decl. Ex. Z.

[12]      Decl. Ex.  AA.  At http://performance.morningstar.com/fund/performance-return.action?t=NYVTX&region=usa&culture=en-US (last accessed August 5, 2014).

Over longer periods, the Fund's performance has been stellar.  For example, it outperformed its benchmark, the S&P 500, in 33 of 34 rolling ten-year time frames and outperformed its peer group in all 34 rolling ten-year time frames.  Decl. Ex. BB at 44.[13]

**Prior Section 36(b) Litigation Against Davis**

Two courts have previously granted 12(b)(6) dismissals with prejudice of lawsuits alleging § 36(b) claims against Davis.  See In re Davis Selected Mut. Funds Litig., No. 04-cv-4186 (MGC), 2005 WL 2509732 at *3, (S.D.N.Y. Oct. 11, 2005); Turner v. Davis Selected Advisers, L.P., Civ. No. 08-421 (D. Ariz. June 1, 2011), ECF No. 80 (order of dismissal); ECF No. 109 (partially granting defendants' motion to take judicial notice and denying plaintiff's Rule 59(e) motion) (March, 19, 2013), at Decl. Exs. CC & DD.

The recent Turner case challenged the Fund's advisory fee (as well as other fees).  The district court issued a reasoned opinion applying the Supreme Court's decision in Jones v. Harris and dismissed the action with prejudice.  See Turner v. Davis Selected Advisers, L.P., Civ. No. 08-421, at 13-17 (D. Ariz. June 1, 2011), Decl. Ex. CC.  An appeal is currently pending.  9th Cir. Dckt. No. 13-15742.

The Fund's advisory fee schedule is more favorable to the Fund now than it was during part of the lengthy time period covered by the Turner action, as more favorable breakpoints are now offered at a lower net asset level.[14]

---

[13]     The Fund did almost as well over rolling five-year periods, beating the S&P 500 in 29 of the 39 of them and its peer group in 32 of 39.  Decl. Ex. BB at 44.

[14]     See Decl. Ex. EE at 265 and Ex. FF.

## ARGUMENT

### I.   THE <u>TURNER</u> DISMISSAL PRECLUDES THIS ACTION

Issue preclusion bars a plaintiff from relitigating an issue that has already been fully and

fairly litigated in a prior proceeding.  <u>Purdy v. Zeldes</u>, 337 F.3d 253, 258 (2d Cir. 2003).[15]

<u>Turner</u> encompassed the same claim and issue Plaintiffs seek to relitigate here: whether

the Fund's advisory fee rate, which has not increased since the <u>Turner</u> dismissal, is legally

excessive under § 36(b).  The <u>Turner</u> court issued a thorough and thoughtful opinion considering

and rejecting allegations similar to those raised here.  <u>See</u> Decl. Ex. CC, <u>Turner v. Davis</u>

<u>Selected Advisers L.P.</u>, Civ. No. 08-421 (D. Ariz. June 1, 2011), ECF No. 80.  These included

allegations regarding fees charged by comparable mutual funds, <u>id.</u> at 14-15, averments

regarding the Fund's performance, <u>id.</u> at 14-15, and similar contentions concerning the

composition and process of the Fund's board.  <u>Id.</u> at 16-17.  <u>Turner</u> also rejected a § 47(b) claim

on a ground that (as demonstrated below) applies equally here.  <u>Id.</u> at 17-19.  Accordingly, the

<u>Turner</u> Court granted defendants' motion to dismiss the action with prejudice.  <u>Id.</u> at 19.[16]

Plaintiffs have alleged no significant change in the facts since the <u>Turner</u> judgment.  The

dismissal in <u>Turner</u> therefore precludes the present action.  <u>See</u> <u>Gartenberg v. Merrill Lynch</u>

<u>Asset Mgmt. Inc. Trust</u>, ("Gartenberg II") 573 F. Supp. 1293, 1299 (S.D.N.Y. 1983) ("An

advisor would be entitled to the preclusive effects of a final judgment dismissing a claim that the

advisory fee was excessive, if the costs and benefits to the advisor of the fee arrangement were

no more favorable to the advisor in the subsequent suit than they were in the suit that was

---

[15]      Issue preclusion applies when: (1) the issues in both proceedings are identical; (2) the issue in the prior proceeding was actually litigated and decided; (3) there was a full and fair opportunity for litigation in the prior proceeding; and (4) the issue previously litigated was necessary to support a valid, final judgment on the merits.  <u>Id.</u>
[16]      The pending appeal <u>Turner</u> does not affect the finality of the judgment for preclusion purposes.  <u>See, e.g.</u>, <u>United States v. Int'l Brotherhood of Teamsters</u>, 905 F.2d 610, 620-21 (2d Cir. 1990); <u>Petrella v. Siegel</u>, 843 F.2d 87, 90 (2nd Cir. 1988); <u>United States v. Nysco Labs., Inc.</u>, 318 F.2d 817, 817-18 (2d Cir. 1963).

dismissed."), aff'd Gartenberg v. Merrill Lynch Asset Mgmt., Inc., 740 F.2d 190 (2d Cir.

1984).[17]

It makes no difference that Plaintiffs in this case have offered certain additional

allegations, principally that Davis charges the Fund more for advisory services than it charged

the Subadvised Funds for subadvisory services.  Not only are such allegations meritless and

defective (as demonstrated below), but the facts on which they are based were in the public

domain and available to the plaintiff in the Turner action.  Issue preclusion applies in such

circumstances irrespective of whether a new plaintiff adduces additional evidence or otherwise

purports to improve her complaint.  See, e.g., In re Sonus Networks, Inc. S'holder Deriv. Litig.,

499 F.3d 47, 62-63 (1st Cir. 2007) (giving issue preclusive effect to earlier dismissal in

derivative action where facts were not alleged in original complaint but original plaintiff could

have obtained the information); Arduini ex rel. Int'l Game Tech. v. Hart, No. 3:11-cv-255-ECR-

VPC, 2012 WL 893874, at *3 (D. Nev. Mar. 14, 2012) ("[p]laintiff's arguments that he has

allegations specific to the demand futility issue that are different from the allegations brought up

in [the underlying proceeding do not] preclude our use of issue preclusion").[18]

---

[17]     By contrast, the Gartenberg II plaintiff pointed to major changes since the first lawsuit, including that "the Manager's expenses… declined, while compensation increased by 25%," that "the Manager's fees have increased while the number of orders processed by the Broker has declined," and that the adviser made various misrepresentations.  Gartenberg II, 573 F. Supp. at 1299.  Even with all these changed circumstances, the court made clear that the prior adjudication was entitled to great weight.  Although not preclusive, the prior determination had "a strong effect on the present action due to the doctrine of *stare decisis*" and the findings of fact in the prior action were deemed "controlling in this case on all issues where a change in circumstances is not demonstrated by the parties."  Id. at 1300.

[18]     See also In re Bed Bath & Beyond Inc. Deriv. Litig., Civil Action No. 06-5107 (JAP), 2007 WL 4165389, at *6 (D. N.J. Nov. 19, 2007) (applying preclusive effect to different claims regarding different time periods); LeBoyer v. Greenspan, No. CV 03-5603-GHK (JTLx), 2007 WL 4287646, at *2-*4 (C.D. Cal. June 13, 2007) (applying preclusive effect to all possible claims relating to restatement, whether or not previously pled).  See generally Benjamin v. Coughlin, 905 F.2d 571, 576 (2d Cir. 1990) ("'substantial overlap' of evidence and arguments" supported issue preclusion) (citing Restatement (Second) of Judgments § 27 comment c); Givens v. N.Y.C., No. 11-civ-2568 (PKC)(JCF), 2012 WL 75027 (S.D.N.Y. Jan. 10, 2012), at *6 ("plaintiff does not avoid [collateral estoppel] by adding factual allegations to her Amended Complaint" which were simply "further evidence factually supporting an issue that is already precluded.").

The difference in the identity of the named plaintiffs in this and the Turner action is similarly beside the point.  Both sets of plaintiffs claim to be acting on behalf of the Fund, and "courts within this district have long recognized the preclusive effect of judgments in derivative actions upon subsequent actions brought by stockholders who were not plaintiffs in the original action."  Henik ex rel. LaBranche & Co., Inc. v. LaBranche, 433 F. Supp. 2d 372, 380 (S.D.N.Y. 2006); Lerner v. Reserve Mgmt. Co., No. 80 Civ. 1238, 1981 WL 1641 (S.D.N.Y. June 17, 1981) (§ 36(b) lawsuit) ("The fact that different shareholders are involved in bringing the derivative actions does not negate identity of parties."  Id. at *2.); Ashare v. Brill, 560 F. Supp. 18 (S.D.N.Y. 1983) (similar).[19]

Accordingly, Turner is binding on Plaintiffs here, see Henik ex rel. LaBranche & Co., 433 F. Supp. 2d at 380, and this case should be dismissed with prejudice.

## II.    THE COMPLAINT FAILS TO STATE A § 36(b) CLAIM

Determining whether a plaintiff has surmounted the exacting "so disproportionately large" standard of § 36(b) "requires consideration of all relevant factors," Jones, 559 U.S. at 349, including the six "Gartenberg factors."  These are: (i) the nature and quality of services provided by the investment adviser and its affiliates; (ii) the profitability of the fund to the adviser and its affiliates; (iii) any fall-out benefits (i.e., other income) the adviser would not have received but for managing the fund; (iv) whether the adviser is sharing any economies of scale realized in managing the fund; (v) comparative expense ratios and advisory fees; and (vi) the directors' care and conscientiousness.  See, e.g., Jones, 559 U.S. at 344-45 & n.5, 348, 351-52.

---

[19]    See also Papilsky v. Berndt, 466 F.2d 251 (2d Cir. 1972); Kaplan v. Bennett, 465 F. Supp. 555 (S.D.N.Y. 1979).  While not subject to Fed. R. 23.1, a § 36(b) action is a "private right of derivative action."  Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt., 595 F.3d 86, 96-98 (2d Cir. 2010) (citations and internal quotation marks omitted).

Courts in this Circuit have been vigilant in dismissing § 36(b) complaints that failed to state a claim.  See Amron, 464 F.3d at 344-46 (affirming dismissal of § 36(b) complaints where plaintiffs had failed to allege "those facts *necessary* to a finding of liability"); Mintz v. Baron, No. 05 Civ. 4904 (LTS), 2009 WL 735140, at *2 (S.D.N.Y. Mar. 20, 2009) (collecting Circuit cases dismissing § 36(b) complaints; Amron requires courts to "test[] the specific factual allegations of section 36(b) complaints in relation to each of the Gartenberg factors").  Jones also cited with approval cases from various Circuits granting motions to dismiss.[20]

Plaintiffs attempt to allege a § 36(b) case based on assertions concerning just 3 factors: comparative fees, performance, and director diligence.  They fall far short of stating a claim.

### A.  Plaintiffs' Comparative Fee Allegations Are Inapt and Insufficient to State a Claim

#### 1.  Advisory Fees and Subadvisory Fees Are Not Comparable

The fees a mutual fund investment adviser charges its other clients may be probative in a § 36(b) case -- but only when the different clients receive comparable services.  Jones, 559 U.S. at 350 ("courts must reject" fee comparisons "[i]f the services rendered are sufficiently different").  Plaintiffs nonetheless predicate their case almost entirely on the type of "inapt comparison" that the Supreme Court forbade in Jones.  559 U.S. at 350.

Plaintiffs contend that because the *advisory* fee the Fund paid Davis exceeds the *subadvisory* fees other institutions paid Davis for managing assets in their Subadvised Funds, Compl. ¶¶ 5, 68-69, the Fund's higher advisory fee must be "excessive."  Compl. ¶¶ 5-6, 40-77.

Plaintiffs attempt to justify the comparison by arguing that Davis uses the same portfolio managers (the Large Cap Value Team), Compl. ¶¶ 34, 59, employs substantially the same

---

[20]     The following cases granting motions to dismiss were cited approvingly in Jones: Amron, 464 F.3d 338; Krantz v. Prudential Invs. Fund Mgmt. LLC, 305 F.3d 140 (3d Cir. 2002); Migdal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321 (4th Cir. 2001); In re Franklin Mut. Funds Fee Litigation, 478 F. Supp. 2d 677 (D. N.J. 2007); In re AllianceBernstein Mut. Fund Excessive Fee Litig., No. 04-Civ. 4885 (SWK), 2006 WL 1520222 (S.D.N.Y. May 31, 2006); Yameen v. Eaton Vance Distributors, Inc., 394 F. Supp. 2d 350 (D. Mass. 2005).

investment strategy using the same research and technology, Compl. ¶¶ 61-65, uses the same

compliance personnel, Compl. ¶ 67, and because Davis undertook certain similar contractual

duties for both the Fund and for the Subadvised Funds.  Compl. ¶¶ 57-58.  The Complaint

concludes that Davis provided "the same or substantially the same" advisory services to both the

Fund and to the Subadvised Funds.  Compl. ¶ 56.  See also Compl. ¶¶ 45-77.

Plaintiffs, however, do not allege that the *advisory fee* the Fund pays Davis is higher than

the *advisory fees* the Subadvised Funds pay to their own investment advisers.  Nor can they.  As

noted above in the Background section, the Fund's advisory fee is lower than the advisory fees

of all the Subadvised Funds.  Rather than attempting an "apples-to-apples" comparison, Plaintiffs

instead contrast the *advisory* fee paid by the Fund with the *subadvisory* fees paid by the

investment advisers of the Subadvised Funds.

This comparison is meaningless because Davis serves in different capacities with respect

to the Funds and the Subadvised Funds.  As Plaintiffs allege, Davis and Davis-NY "serve as the

Fund's investment advisers," Compl. ¶ 22, whereas "Davis acts as a so-called 'subadviser'... to

each Subadvised Fund."  Compl. ¶ 54.  The distinction is important.  "[I]nvestment advisers and

subadvisers perform distinct services," and these "differences ... alone justify" different fee

arrangements.  Hoffman v. UBS-AG, 591 F. Supp. 2d 522, 540 (S.D.N.Y. 2008).  See also

Gartenberg v. Merrill Lynch Asset Mgmt., Inc., 694 F.2d 923, 929 n.2 (2d Cir. 1982) (typically,

investment advisers and their affiliates "manage the fund's portfolio" ***and*** furnish "some, and in

certain cases, virtually all of the nonadvisory services necessary to [the fund's] operation").

Davis contracted directly with the Fund to provide its services as investment adviser, is

paid by the Fund, and provides the full range of services required to run the Fund, overseen only

by the Fund's Board.  See Compl. ¶ 26; Decl. Ex. C at ¶¶ 1-2.

In contrast, as a subadviser Davis has a more limited role.  Davis does not contract with Subadvised Funds directly, but instead with the financial institutions that serve as the investment advisers to the Subadvised Funds.  Compl. ¶¶ 49, 54; see Decl. Exs. E-J.  The Subadvised Funds are not parties to those contracts.  Those contracts require Davis to provide a narrower range of services under the supervision of the Subadvised Funds' investment advisers.[21]  For example, in the case of the Columbia Subadvised Fund, the subadviser's duties are "[g]enerally … limited to asset management and related recordkeeping services."[22]

The Complaint also fails to allege facts comparing the potential liabilities assumed by an investment adviser and subadviser.  Such a comparison further undermines Plaintiffs' case.  The adviser's broader role, as well as the fact that it furnishes the Fund officers and management directors, subjects it to greater legal responsibility and risk involving issues such as registration statement disclosure, fund management, pricing and operational errors.[23]  Cf. Jones, 559 U.S. at 350 n.8 (citing with approval In re AllianceBernstein Mut. Fund Excessive Fee Litigation, No. 04 Civ. 4885 (SWK), 2006 WL 1520222, *2 (S.D.N.Y. May 31, 2006), for the proposition that higher fee paid by mutual fund client "resulted from different services and different liabilities assumed").  These risks are heightened by the fact that (as in most cases) the adviser rather than the subadviser employs the chief compliance officer mandated by ICA Rule 38a-1, 17 C.F.R. § 270.38a-1(a)(4), or has primary responsibility for risk management on a day-to-day basis.[24]

---

[21]     See, e.g., Decl. Ex. G at ¶ 3; Decl. Ex. E at ¶¶ 1(a)(i), 2.

[22]     Decl. Ex. Y at 8.  See also Decl. Ex. F.

[23]     See, e.g., 15 U.S.C. § 77o(a); 15 U.S.C. § 78t(a); 15 U.S.C. § 80a-47(a) (controlling person provisions of the federal securities laws); Bellikoff v. Eaton Vance Corp., 481 F.3d 110, 116 (2d Cir. 2007) (noting that ICA § 42, 15 U.S.C. § 80a-41, "explicitly provides for enforcement of all ICA provisions by the SEC through investigations and civil suits for injunctions and penalties").

[24]     See, e.g., Decl. Ex.B at 131; Ex. GG at 4 (The adviser "has primary responsibility for the funds' risk management on a day-to-day basis as part of its overall responsibilities"); Ex. HH at 4; Ex. II at 3.

Plaintiffs and their counsel broadly attack adviser-subadviser management structures for mutual funds.  But over nearly two decades, the SEC has approved as "necessary or appropriate in the public interest and consistent with the protection of investors," 15 U.S.C. § 80a-6(c), more than *two hundred* exemptive applications authorizing "manager of manager" arrangements without the usual requirement that shareholders vote on a change in subadviser.[25]  A central rationale for these exemptive orders is that a subadviser in "manager of manager" funds such as the Subadvised Funds is analogous to an individual portfolio manager who may be terminated at the discretion of the adviser, while the investment adviser is the investment company's principal service provider.[26]  The SEC similarly has granted no-action relief to entities in an affiliated adviser-subadviser management structure.[27]

Plaintiffs should not be permitted to use repetitive § 36(b) lawsuits to vent their broad disagreements with a common, SEC-approved fund management structure.  See Amron, 464 F.3d at 342-44 (rejecting § 36(b) complaint that "rel[ied] heavily on generalities about deficiencies in the securities industry, and statements made by industry critics and insiders").

---

[25]     See IM Guidance Update No. 2014-03 (Feb. 2014), *available at* http://www.sec.gov/divisions/investment/guidance/im-guidance-2014-03.pdf (last accessed August 13, 2014).  See also, e.g., USAllianz Variable Insurance Products Trust and USAllianz Advisers, LLC, Investment Co. Act Release No 25715, 67 Fed. Reg. 167, 55286 (Aug. 28, 2002); USAllianz Variable Insurance Products Trust, Supplement (Form 497) (filed Sept. 23, 2002) (notice of grant of exemptive relief); Manufacturers Investment Trust and Manufacturers Securities Services, LLC, Investment Co. Act Release No. 24226, 65 Fed. Reg. 797 (Dec. 29, 1999); Ex. GG at 5.

[26]     See In re Exemption from Shareholder Approval for Certain Subadvisory Contracts, Release No. 48683, Release No. 33-8312, Release No. 34-48683, Release No. IC - 26230, 81 S.E.C. Docket 939, 2003 WL 22423216, at *6 (Oct. 23, 2003).

[27]     See, e.g., Invesco, SEC No-Action Letter, No. 97-198-CC, 1997 WL 434442 (Aug. 5, 1997) (no shareholder approval requirement where fees reallocated between primary adviser and a subadviser provided that the new arrangement did not materially change the advisory relationship or the terms of the agreement shareholders previously approved); Wells Fargo, N.A., SEC No-Action Letter, 1998 WL 146223 (Mar. 31, 1998).

### 2.      Plaintiffs' Inapt Fee Comparison Is Insufficient on Its Own Terms

Equating Davis's adviser and subadviser roles is just the type of "inapt comparison" the

Supreme Court rejected in Jones.  559 U.S. at 350.  But even accepting *arguendo* that Plaintiffs

had adequately alleged that Davis provided similar services to the Fund and the Subadvised

Funds (which they plainly have not), this would not be enough to state a § 36(b) claim in this

case.

Before § 36(b) was enacted, investment advisers routinely charged mutual funds more

than they charged institutional clients.  See Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 537

(1984).  Among the reasons for such a differential is that (as Plaintiffs acknowledge, see Compl.

¶¶ 49, 55, 58, 106) investment company investment advisers typically sponsor the fund.  They

therefore bear the corresponding entrepreneurial risks.[28]

Section 36(b) did not categorically prohibit such fee differences.  To the contrary, the

Supreme Court ***rejected*** the plaintiffs' basic contention that "a fiduciary may charge its

controlled clients no more than its independent clients."  Jones, 559 U.S. at 350.  As Jones

explained, a court must take account of the "different markets for advisory services."  Id. at 350

n.8.  Thus, "[e]ven if the services provided and fees charged to an independent fund are

relevant," the ICA "does ***not*** necessarily ensure fee parity between mutual funds and institutional

clients."  Id. at 350 (emphasis added).  Against this backdrop, Jones provided additional

instructions that foreclose Plaintiffs' claim for three independent reasons.

First, plaintiffs continue to "bear the burden in showing that fees are beyond the range of

arm's-length bargaining."  Id., at 350 n.8.  This requirement applies in full force at the pleading

---

[28]      See, e.g., Daily Income Fund, 464 U.S. at 536 ("Unlike most corporations, an investment company is
typically created and managed by a pre-existing external organization known as an investment adviser.");
Gartenberg v. Merrill Lynch Asset Management, Inc., 528 F. Supp. 1038, 1067 (S.D.N.Y. 1981), aff'd, 694 F.2d
923 (2d Cir. 1982) (creating and managing a mutual fund is an entrepreneurial activity involving risk).

stage.  See Amron, 464 F.3d at 344 (plaintiff must allege facts "sufficient to establish liability").

Thus, it is insufficient to plead that a Fund did not receive the "best deal possible."  Krinsk v.

Fund Asset Mgmt., Inc., 875 F.2d 404, 409 (2d Cir. 1989).  Nonetheless, Plaintiffs merely allege

that the Fund's fee was higher than some of Davis's other independent clients.  As noted in the

Background section, however, the Fund's fees are essentially identical to those of another

relevant Davis client: the Clipper Fund, an investment company that was not sponsored by and

had no affiliation with Davis prior to replacing its previous investment adviser with Davis in

2006.  This alone demonstrates that the Fund's fee is within the range of arm's-length

bargaining.

Second, while Jones (and Amron) cautioned against relying too heavily on comparisons

with fees charged to mutual funds by other advisers, Jones, 559 U.S. at 350, Amron, 464 F.3d at

245, it is noteworthy that Plaintiffs have failed to allege where on the range of comparable

mutual fund fees the Fund's advisory fee falls.  The omission is unsurprising.  According to

Morningstar (on which Plaintiffs heavily rely) the Fund's expense ratio is "low," earning it

positive marks from Morningstar for fees.  See Decl. Ex. Z (emphasis added).  See also Turner v.

Davis Selected Advisers, L.P., Civ. No. 08-421, at 16 (D. Ariz. June 1, 2011), ECF No. 80 (the

Fund "has breakpoints that are more beneficial to shareholders than other comparable funds").

Third, Jones made clear that plaintiffs must do more than allege and prove that a Fund

has paid more than institutional clients for an adviser's services.  "Only where plaintiffs have

shown a large disparity in fees that cannot be explained by the different services in addition to

other evidence that the fee is outside the arm's-length range will trial be appropriate."  Jones, 559

U.S. at 350 n.8.  The Complaint's other sparse allegations do nothing to move Plaintiffs' claims

"across the line from conceivable to plausible."  Iqbal, 556 U.S. at 680 (citation and internal

quotation marks omitted).[29]

### B. Plaintiffs' Allegations Regarding the Fund's Recent Underperformance Are of Limited Relevance and Ignore Davis's Long-Term Track Record

The Complaint's other principal theme is that the advisory services provided by Davis

supposedly were of "low quality," Compl. ¶¶ 7, 78, because the Fund's performance "lagged the

Fund's benchmark (the S&P 500 Index) and the investment performance of other, comparable

mutual funds over the last 10 years."  Compl. ¶¶ 8, 80.  The Complaint adds that the Fund's

underperformance during the same time period resulted in Morningstar assigning the Fund a

performance ranking of one star for the last three years (meaning that the Fund's performance

ranked in the bottom 10% of its Morningstar category) and two stars for the most recent five and

ten-year periods (meaning that the Fund's performance ranked in the bottom 32.5% of its

Morningstar category).  Compl. ¶¶ 82-90.

The Court should swiftly reject these allegations in light of Amron, 464 F.3d 338 (2d Cir.

2006).  Amron affirmed the 12(b)(6) dismissal of a pair of § 36(b) complaints that "ar[o]se out of

the poor performance of two mutual funds," Amron, 464 F.3d at 340, an actively managed fund

and an index fund.

As here, the Amron plaintiffs alleged that the actively managed fund lagged its

benchmark (the S&P 500 index) for the preceding one-, five-, and ten-year periods.  See, e.g., id.

at 341.  The Amron plaintiffs also alleged that the index fund underperformed.  Its "annual return

between 1995 and 2002 was 4.11%, while the return of the S&P 500 Index… was 6.07%."  Id.,

---

[29]     Cf. Gallus v. Ameriprise Fin., Inc., 675 F.3d 1173, 1180-81 (8th Cir. 2012) (affirming summary judgment where plaintiffs adduced no adequate evidence beyond comparison with fees charged institutional clients).

18

at 342.  Further, the index fund "was in the bottom 20% of all comparable funds during both the one-year and five-year periods ended July 31, 2003."  Id.  (internal quotation marks omitted).

The Second Circuit rejected plaintiffs' argument that these allegations established that the fees were excessive.  Following Migdal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321 (4th Cir. 2001), Amron recognized that allegations of underperformance shed limited light on the nature and quality of the services provided by an adviser.  Amron, 464 F.3d at 344 (citing and quoting Migdal).  As Migdal explains, "[i]nvesting is not a risk-free endeavor."  Migdal, 248 F.3d at 327.  In addition, "[e]ven the most knowledgeable advisers do not always perform up to expectations, and investments themselves involve quite different magnitudes of risk.  Furthermore, investment results are themselves cyclical."  Id.

Under Amron "allegations of underperformance alone are insufficient to prove that an investment adviser's fees are excessive."  Amron, 464 F.3d at 344, quoting Migdal, 248 F.3d at 327.  Amron noted that the index fund had underperformed 80% of its peers.  464 F.3d at 344.  This was a significant shortfall because (unlike an actively managed portfolio like the Fund's) managing an index fund that "seeks merely to mimic the return of the S&P 500 Index" is "not so demanding on the adviser's expertise."  Id.  Nonetheless, the Second Circuit concluded that plaintiffs' underperformance and other allegations "failed to allege any facts pertinent to the relationship between fees and services."  Id.

Plaintiffs' underperformance allegations are substantially similar to those found insufficient in Amron and should be dismissed for the same reasons.  The Turner court also rejected similar allegations regarding Davis's performance.  See Turner v. Davis Selected Advisers, L.P., Civ. No. 08-421, at 13-17 (D. Ariz. June 1, 2011), ECF No. 80.

Moreover, as the public record available to the court demonstrates, an attack on Davis's services based on performance has no merit.

When viewed over a longer and more meaningful investment horizon (particularly given that the Fund's objective is "long-term growth of capital," Compl. ¶ 30), the Fund has significantly outperformed its benchmarks and comparable funds, including outperforming the S&P 500 in 33 of 34 rolling ten-year time frames and its peer group in all 34 rolling ten-year time frames.  See Decl. Ex. BB, p. 44.

This is an extraordinary track record.  As the Financial Industry Regulatory Authority, Inc. ("FINRA") has explained, "[i]n any given year, most actively managed funds do not beat the market" and "very few actively managed funds provide stronger-than-benchmark returns over long periods of time, including those with impressive short term performance records."[30]

### C.  Plaintiffs' Allegations Regarding the Directors Are Irrelevant and Meritless

Plaintiffs' remaining attempt to allege a § 36(b) claim is a series of boilerplate allegations regarding the Board's composition and process in reviewing the fees.  Compl. ¶¶ 91-104.

Because Plaintiffs failed to plausibly allege excessive fees, it is simply unnecessary to consider their allegations regarding the directors.  At most, such allegations merely affect the degree of deference accorded the Board's decision.  They cannot compensate for Plaintiffs' inability to plead facts plausibly showing that the amount of the fee was excessive.  See Jones, 559 U.S. at 352 ("Section 36(b) is sharply focused on the question of whether the fees themselves were excessive") (internal citations and quotation marks omitted); Migdal, 248 F.3d at 328 (same); Gallus v. Ameriprise Fin., Inc., 675 F.3d 1173, 1180 n.4 (8th Cir. 2012) (a

---

[30]    See "Mutual Funds," at http://www.finra.org/Investors/SmartInvesting/ChoosingInvestments/MutualFunds (last accessed August 13, 2014).  FINRA is a self-regulatory organization that carries out a number of quasi-governmental functions pursuant to the Securities Exchange Act of 1934 and under the supervision of the SEC.  See, e.g., Fiero v. Fin. Indus. Regulatory Auth., Inc., 660 F.3d 569, 571 (2d Cir. 2011).

"defective [board] process" does **not** imply an "excessive fee") (emphasis added).

In any event, Plaintiff's claims are further undermined by their allegations that the Fund's disinterested directors approved the fees.  See Compl. ¶ 93; Jones, 559 U.S. at 339-40, 348-49.

The ICA **presumes** that non-affiliated directors "are disinterested" and "a plaintiff's burden to overcome this presumption is a heavy one."  Amron, 464 F.3d at 344 (citation and internal quotation marks omitted, emphasis added).

Plaintiffs come nowhere close to carrying their heavy burden.

Plaintiffs allege that the directors serve on the boards of 12 other Davis-advised funds. Compl. ¶ 95.  But, as the Second Circuit, the Turner Court, and many other courts have recognized, service on multiple boards in a mutual fund family does not suggest a lack of independence.  Indeed, it is a prevailing and (in the view of many) beneficial, industry practice. See Migdal, 248 F.3d at 330-331 (multiple board service is "the prevailing practice in the industry" and offers a number of arguable benefits); Amron, 464 F.3d at 345 (following Migdal and rejecting allegations that directors "serve on the boards of many other mutual funds"); Turner v. Davis Selected Advisers, L.P., Civ. No. 08-421, at 17 (D. Ariz. June 1, 2011), ECF No. 80 (similar).

Plaintiffs further assert that the board service is a "part-time job" for the Fund's directors. Compl. ¶ 94.  This allegation fails as well.  See, e.g., Amron, 464 F.3d at 345 (allegations that directors received compensation and "serve[d] on the boards of many other mutual funds, businesses, and charitable organizations" were "insufficient as a matter of law" to call into question the independence and conscientiousness of the directors).  A board is entrusted with oversight – not day-to-day management of a company.  See generally Stone ex rel. AmSouth Bancorporation v. Ritter, 911 A.2d 362 (Del. 2006).  Thus, outside directors characteristically

"are **not** full-time employees of the corporation."  Lanza v. Drexel & Co., 479 F.2d 1277, 1306

(2d Cir. 1973) (citation omitted, emphasis added).  Not only is there "a general consensus that

[such] outside directors… are desirable," id., but the ICA specifically mandates that a fund's

board consist at least in significant part of independent directors.  See Jones, 559 U.S. at 339.

This requirement is the "cornerstone" of the ICA's efforts to check conflicts of interest.  Id.

Plaintiffs' additional allegation that the Fund's independent directors "are employed full-time in

senior-level positions in management, finance, or law, or serve on [other] boards of directors,"

Compl. ¶ 94, only underscores the Board's broad experience and strong qualifications.[31]

Plaintiffs also complain that, in reviewing the Funds' advisory fees, the Board relied on

information and analysis prepared by Davis.  Compl. ¶ 96.  But, "[o]ne would expect any

conscientious director to request information from management and staff on the day-to-day

operations for which they are responsible." Migdal, 248 F.3d at 331.  Thus, "[t]he ICA itself

approves this very practice."  Id. (citing 15 U.S.C. § 80a-15(c)); Jones, 559 U.S. at 348.

Moreover, Plaintiffs do not allege that the Board relied only on information prepared by Davis.

As reflected in the annual report of the Funds, the Board reviewed, among other things, fee-

related information provided by unaffiliated third-party sources, including information

independently compiled and prepared by Lipper, Inc., on the Fund's fees, expenses, and

performance as compared with a peer group of funds as determined by Lipper.  See Decl. Ex. BB

at 44.

The Complaint nowhere alleges facts showing that the material the Board reviewed was

deficient in any respect.  Instead, Plaintiffs offer only circular allegations suggesting that,

because the Subadvised Funds purportedly paid lower fees, Compl. ¶ 100, the Board's process

must have been deficient (e.g., the Board must have devoted insufficient time to reviewing the

---

[31]     See also Decl. Ex. A at 130-33.

fees, Compl. ¶ 93, or failed to review additional (unspecified) "information or analyses," Compl. ¶ 97, or "accepted Davis's representations," Compl. ¶ 98). These conclusory averments are "not entitled to the assumption of truth." Iqbal, 556 U.S. at 697. Moreover, as demonstrated above, the advisory fees paid by the Subadvised Funds are *higher* than, the fees paid by the Fund. Thus, if anything, the fees paid by the Subadvised Funds reinforce the conclusion that the Fund's directors succeeded in negotiating advisory fees reflective of the same arm's length bargaining that Plaintiffs admit has occurred between Davis and the Subadvised Funds. Cf. Compl. ¶¶ 105, 106, 108, 109; see In re Scudder Mut. Funds Fee Litig., No. 04 Civ. 1921 (DAB), 2007 WL 2325862, at *18 (S.D.N.Y. Aug. 14, 2007).

Plaintiffs finally assert that, because the Fund underperformed during certain recent periods, and given that Davis was replaced as subadviser to certain Subadvised funds, Compl. ¶¶ 110-113, the Board must have failed to "take appropriate action." Compl. ¶ 101. Plaintiffs suggest that the Board could have solicited proposals from other investment advisers, or terminated Davis as adviser. Compl. ¶¶ 102, 110. But such assaults on the Board's business judgment in selecting an adviser go beyond the limited scope of § 36(b). See Green v. Nuveen Advisory Corp., 295 F.3d 738, 744 n.9 (7th Cir. 2002) (supposed "fund mismanagement issues" outside the purview of 36(b); Migdal, 248 F.3d at 329 (similar). Regardless, the Board's decision to retain Davis was eminently reasonable given Davis's exceptional long-term track record, which the Board appropriately considered,[32] and the fact that Fund shareholders invested with the expectation of having their money managed by Davis. See Gartenberg v. Merrill Lynch Asset Mgmt., Inc., 694 F.2d 923, 929 n.2 (2d Cir. 1982) (fund directors are properly reluctant to

---

[32]     See  Decl. Ex. BB at 42-44.

replace an adviser given that "many shareholders may have invested in the fund on the strength

of the adviser's reputation" and "rely on" the adviser's service).[33]

## III.   PLAINTIFFS' SECTION 47(b) CLAIM MUST BE DISMISSED

The Complaint's § 47(b) claim (¶ 124), should be dismissed for multiple reasons:

1.      Section 47(b) authorizes a limited rescission remedy only for contracts involving

"a violation of the ICA."  15 U.S.C. § 80a-46(b).  Plaintiffs have alleged no such violation.

2.      Even assuming counterfactually that Plaintiffs had stated an adequate § 36(b)

violation, they cannot circumvent the carefully circumscribed limits of § 36(b) by adding a §

47(b) claim seeking additional or different remedies.  See, e.g., Steinberg v. Janus Capital Mgmt.

LLC, 457 F. App'x. 261, 267 (4th Cir. Dec. 2, 2011).

3.      To the extent that Plaintiffs seek to assert a separate cause of action for violations

of § 47(b), they cannot do so because "Section 47(b) creates a remedy rather than a distinct cause

of action or basis of liability."  Santomenno v. John Hancock Life Ins. Co., 677 F. 3d 178, 187

(3d Cir. 2012).

4.      Section 47(b) makes rescission available only to a "party" to that contract.  As

non-parties to the contracts between the Fund and defendants, Plaintiffs are ineligible to seek

relief under § 47(b) without complying with Fed. R. Civ. P. 23.1.  See Turner v. Davis Selected

Advisers, L.P., Civ. No. 08-421, at 18 (D. Ariz. June 1, 2011), ECF No. 80; Hamilton v. Allen,

396 F. Supp. 2d 545, 558 (E.D. Pa. 2005).

---

[33]      In another repetitive variation, Plaintiffs allege that the advisory agreement should have included a "most favored nation provision." Compl. ¶ 99.  Of course, no such provision is required.  See Krinsk, 875 F.2d at 409 ("best deal" not required).  And as already noted, the Fund's management fee was lower than those of the Subadvised Funds.

Similarly, notwithstanding Plaintiffs' insinuation (at ¶ 103) an advisory agreement need not include a performance adjustment.  Moreover, due to the Fund's outperformance for many years, see Decl. Ex. BB at 44, the Fund may have paid a **higher** advisory fee during 2013 and much of its history if the Fund's advisory agreement had included a statutorily authorized fulcrum fee.  See 15 U.S.C. § 80a-205(b), 17 C.F.R. §§ 275.205-1, 205-2.

## **CONCLUSION**

The Complaint should be dismissed with prejudice.

August 25, 2014                          Respectfully Submitted:

                                         K&L GATES LLP


                                         By:   /s/   Joanna A. Diakos

                                         Joanna A. Diakos
                                         599 Lexington Ave.
                                         New York, NY 10022
                                         Tel:    (212) 536-3900
                                         Fax:    (212) 536-3901
                                         Email: joanna.diakos@klgates.com

                                         Stephen G. Topetzes (*pro hac vice* forthcoming)
                                         Jeffrey B. Maletta (*pro hac vice* forthcoming)
                                         Nicholas G. Terris (application pending)
                                         Nicole A. Baker (*pro hac vice* forthcoming)
                                         Amy J. Eldridge (*pro hac vice* forthcoming)
                                         **K&L Gates LLP**
                                         1601 K Street NW
                                         Washington, D.C. 20006
                                         Tel:    (202) 778-9000
                                         Fax:    (202) 778-9100
                                         Email: stephen.topetzes@klgates.com
                                                 jeffrey.maletta@klages.com
                                                 nicholas.terris@klgates.com
                                                 nicole.baker@klgates.com
                                                 amy.eldridge@klgates.com


                                         *Attorneys for Davis Selected Advisers, L.P., and*
                                         *Davis Selected Advisers-NY, Inc.*

25