**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

_____

Gary A. Hebda and Deborah L. Hebda,   )
   )
                        Plaintiffs,   )
   )
                 vs.   )    1:14-cv-4318 (LTS) (HBP)
   )
Davis Selected Advisers, L.P., and   )
Davis Selected Advisers-NY, Inc.,   )    **ORAL ARGUMENT REQUESTED**
   )
                  Defendants.   )
_____)

## <u>DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR<br>MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT</u>

Joanna A. Diakos
Sarah Peck Kenney
**K&L Gates LLP**
599 Lexington Ave.
New York, NY 10022
Tel:   (212) 536-3900
Fax:   (212) 536-3901
Email: joanna.diakos@klgates.com
       sarah.kenney@klgates.com

Stephen G. Topetzes (*pro hac vice*)
Jeffrey B. Maletta (*pro hac vice*)
Nicholas G. Terris
Nicole A. Baker (*pro hac vice*)
Amy J. Eldridge (*pro hac vice*)
**K&L Gates LLP**
1601 K Street NW
Washington, D.C. 20006
Tel:   (202) 778-9000
Fax:   (202) 778-9100
Email: stephen.topetzes@klgates.com
       jeffrey.maletta@klgates.com
       nicholas.terris@klgates.com
       nicole.baker@klgates.com
       amy.eldridge@klgates.com

*Attorneys for Davis Selected Advisers, L.P., and Davis Selected Advisers-NY, Inc.*

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ...........................................................................................1

STANDARD FOR MOTION TO DISMISS.....................................................................3

BACKGROUND ...............................................................................................................4

ARGUMENT .....................................................................................................................8

I.       THE <u>TURNER</u> DISMISSAL PRECLUDES THIS ACTION..............................8

II.      THE COMPLAINT FAILS TO STATE A § 36(b) CLAIM ............................11

         A.       Plaintiffs' Comparative Fee Allegations Are Inapt and Insufficient
                  to State a Claim..................................................................................12

                  1.       Advisory Fees and Subadvisory Fees Are Not Comparable....................12

                  2.       Plaintiffs' Inapt Fee Comparison Is Insufficient on Its Own Terms..........15

         B.       Plaintiffs' Allegations Regarding the Fund's Recent Underperformance
                  Are of Limited Relevance and Ignore Davis's Long-Term Track Record ...........17

         C.       Plaintiffs' Conclusory "Fall Out" Benefit Allegations Add Nothing ...............19

         D.       Plaintiffs' Allegations Regarding the Directors Are Irrelevant and
                  Meritless..........................................................................................21

III.     PLAINTIFFS' SECTION 47(b) CLAIM MUST BE DISMISSED .................................24

CONCLUSION.................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Acticon AG v. China North East Petroleum Holdings Ltd.,
   692 F.3d 34 (2d Cir. 2012)..................................................................... 4

AmBase Corp. v. City Investing Co. Liquidating Trust,
   326 F.3d 63 (2d Cir. 2003)..................................................................... 4

Amron v. Morgan Stanley Inv. Advisors, Inc.,
   464 F.3d 338 (2d Cir. 2006)........................................................... passim

Arduini ex rel. Int'l Game Tech. v. Hart,
   774 F.3d 622 (9th Cir. 2014) ................................................................ 10

Ashare v. Brill,
   560 F. Supp. 18 (S.D.N.Y. 1983)......................................................... 10

Ashcroft v. Iqbal,
   556 U.S. 662 (2009)............................................................... 3-4, 17, 23

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
   493 F.3d 87 (2d Cir. 2007)..................................................................... 4

Bellikoff v. Eaton Vance Corp.,
   481 F.3d 110 (2d Cir. 2007)................................................................. 14

Benjamin v. Coughlin,
   905 F.2d 571 (2d Cir. 1990)................................................................. 10

Daily Income Fund, Inc. v. Fox,
   464 U.S. 523 (1984)............................................................................. 15

Gallus v. Ameriprise Fin., Inc.,
   675 F.3d 1173 (8th Cir. 2012) ....................................................... 17, 21

Gartenberg v. Merrill Lynch Asset Mgmt.
   528 F. Supp. 1038 (S.D.N.Y. 1981)..................................................... 15

Gartenberg v. Merrill Lynch Asset Mgmt., Inc.,
   694 F.2d 923 (2d Cir. 1982)........................................... 1, 13, 20, 24

Gartenberg v. Merrill Lynch Assets Mgmt.,
   573 F. Supp. 1293 (S.D.N.Y. 1983) aff'd sub nom. Gartenberg v. Merrill Lynch
   Asset Mgmt., Inc., 740 F.2d 190 (2d Cir. 1984)................................. 9

iii

Givens v. N.Y.C.,
    No. 11-civ-2568 (PKC)(JCF), 2012 WL 75027 (S.D.N.Y. Jan. 10, 2012) .................... 10

Green v. Nuveen Advisory Corp.,
    295 F.3d 738 (7th Cir. 2002) ....................................................................... 23-24

Hamilton v. Allen,
    396 F. Supp. 2d 545 (E.D. Pa. 2005) ............................................................. 25

Henik ex rel. LaBranche & Co., Inc. v. LaBranche,
    433 F. Supp. 2d 372 (S.D.N.Y. 2006) ............................................................ 10

Hoffman v. UBS-AG,
    591 F. Supp. 2d 522 (S.D.N.Y. 2008) ............................................................ 13

In re AllianceBernstein Mut. Fund Excessive Fee Litigation,
    No. 04-Civ. 4885 (SWK), 2006 WL 1520222 (S.D.N.Y. May 31, 2006) ................ 11, 14

In re American Funds Mut. Funds Fee Litig.,
    No CV 04-5596 GAF (RNBx), 2009 WL 5215755 (C.D. Cal. Dec. 28, 2009) .............. 20

In re Bed Bath & Beyond Inc. Deriv. Litig.,
    Civil Action No. 06-5107 (JAP), 2007 WL 4165389 (D. N.J. Nov. 19, 2007) ............... 10

In re Davis Selected Mut. Funds Litig.,
    No. 04-cv-4186 (MGC), 2005 WL 2509732 (S.D.N.Y. Oct. 11, 2005) ........................... 8

In re Franklin Mut. Funds Fee Litigation,
    478 F. Supp. 2d 677 (D. N.J. 2007) ......................................................... 11, 20

In re Goldman Sachs Mut. Funds Fee Litig.,
    No. 04 Civ. 2567(NRB), 2006 WL 126772 (S.D.N.Y. Jan. 17, 2006) ........................... 20

In re Salomon Smith Barney Mut. Fund Fees Litig.,
    528 F. Supp. 2d 332 (S.D.N.Y. 2007) ............................................................ 20

In re Scudder Mut. Funds Fee Litig.,
    No. 04 Civ. 1921 (DAB), 2007 WL 2325862 (S.D.N.Y. Aug. 14, 2007) ...................... 23

In re Sonus Networks, Inc. S'holder Deriv. Litig.,
    499 F.3d 47 (1st Cir. 2007) ......................................................................... 10

Irish Lesbian & Gay Org. v. Giuliani,
    143 F.3d 638 (2d Cir. 1998) .......................................................................... 8

Jones v. Harris Assoc. L.P.,
    559 U.S. 335 (2010) ............................................................................. passim

iv

Kalish v. Franklin Advisers, Inc.,
    742 F. Supp. 1222 (S.D.N.Y. 1990)..................................................................20-21

Kaplan v. Bennett,
    465 F. Supp. 555 (S.D.N.Y. 1979)........................................................................ 10

Krantz v. Prudential Invs. Fund Mgmt. LLC,
    305 F.3d 140 (3d Cir. 2002)................................................................................. 11

Krinsk v. Fund Asset Mgmt.,
    715 F. Supp. 2d 472(S.D.N.Y. 1988)................................................................... 20

Krinsk v. Fund Asset Mgmt., Inc.,
    875 F.2d 404 (2d Cir. 1989)..................................................................... 16, 20, 24

Lanza v. Drexel & Co.,
    479 F.2d 1277 (2d Cir. 1973)............................................................................... 22

LeBoyer v. Greenspan,
    No. CV 03-5603-GHK (JTLx), 2007 WL 4287646 (C.D. Cal. June 13, 2007) .............. 10

Lerner v. Reserve Mgmt. Co.,
    No. 80 Civ. 1238, 1981 WL 1641 (S.D.N.Y. June 17, 1981)......................................... 10

Meyer v. Oppenheimer Mgmt. Corp.,
    707 F. Supp. 1394 (S.D.N.Y. 1988)..................................................................... 20

Meyer v. Oppenheimer Mgmt. Corp.,
    895 F.2d 861 (2d Cir. 1990)................................................................................. 20

Migdal v. Rowe Price-Fleming Int'l, Inc.,
    248 F.3d 321 (4th Cir. 2001) ....................................................................... *passim*

Mintz v. Baron,
    No. 05 Civ. 4904 (LTS), 2009 WL 735140 (S.D.N.Y. Mar. 20, 2009)................... 2, 4, 11

Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt.,
    595 F.3d 86 (2d Cir. 2010).................................................................................. 10

Purdy v. Zeldes,
    337 F.3d 253 (2d Cir. 2003)................................................................................... 8

R.W. Grand Lodge of F. & A.M. of Penn. v. Salomon Bros. All Cap Value Fund,
    425 F. App'x 25 (2d Cir. 2011)........................................................................... 11

Roth v. Jennings,
    489 F.3d 499 (2d Cir. 2007).................................................................................. 4

Santomenno v. John Hancock Life Ins. Co.,
    677 F. 3d 178 (3d Cir. 2012)................................................................ 24

Schuyt v. Rowe  Price Prime Reserve Fund, Inc.,
    663 F. Supp. 962 (S.D.N.Y. 1987)....................................................... 20

Staehr v. Hartford Fin. Servs. Group, Inc.,
    547 F.3d 406 (2d Cir. 2008).................................................................. 4

Steinberg v. Janus Capital Mgmt. LLC,
    457 F. App'x. 261 (4th Cir. Dec. 2, 2011).......................................... 24

Stone ex rel. AmSouth Bancorporation v. Ritter,
    911 A.2d 362 (Del. 2006)..................................................................... 22

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
    551 U.S. 308 (2007)............................................................................... 4

Turner v. Davis Select Advisers, L.P.,
    Civ. No. 08-421 (D. Ariz. June 1, 2011), ECF No. 80 ............................ *passim*

United States v. Intn'l Board. Of Teamsters,
    905 F.2d 610 (2d Cir. 1990)................................................................. 9

Yameen v. Eaton Vance Distributors, Inc.,
    394 F. Supp. 2d 350 (D. Mass. 2005) ................................................ 11

## STATUTES

15 U.S.C. § 77o(a) .................................................................................... 14

15 U.S.C. § 78t(a) ..................................................................................... 14

15 U.S.C. §§ 80a-1 et seq. .......................................................................... 1

15 U.S.C. § 80a-2(a)(19)(B) ..................................................................... 4

15 U.S.C. § 80a-6(c) ................................................................................. 14

15 U.S.C. § 80a-15(c) ............................................................................... 23

15 U.S.C. § 80a-35(b) ("Section 36(b)" or "§ 36(b)")........................... *passim*

15 U.S.C. § 80a-41 .................................................................................. 14

15 U.S.C. § 80a-46(b) .............................................................................. 24

15 U.S.C. § 80a-47(a) .............................................................................. 14

vi

15 U.S.C. § 80a-205(b) ............................................................................................... 24

**RULES**

17 C.F.R. § 270.38a-1(a)(4) ........................................................................................ 14

17 C.F.R. §§ 275.205-1, 205-2 .................................................................................... 24

Fed. R. Civ. P. 12(b)(6)......................................................................................... *passim*

Fed. R. Civ. P. 59(e) ..................................................................................................... 7

**OTHER AUTHORITIES**

Goodman v. J.P. Morgan Inv. Mgmt., Inc.,
    No. 2:14-cv-414 (S.D. Ohio filed May 5, 2014) ................................................. 1

In re BlackRock Mutual Funds Advisory Fee Litig.,
    3:14-cv-01165 (D.N.J. filed Feb. 21, 2014)......................................................... 1

In re Exemption from Shareholder Approval for Certain Subadvisory Contracts,
    Release No. 48683, Release No. 33-8312, Release No. 34-48683, Release No. IC
    - 26230, 81 S.E.C. Docket 939, 2003 WL 22423216 (Oct. 23, 2003)............................ 15

USAllianz Variable Insurance Products Trust and USAllianz Advisers, LLC,
    Investment Co. Act Release No 25715, 67 FED. REG. 167, 55286 (Aug. 28, 2002) ........ 14

USAllianz Variable Insurance Products Trust,
    Supplement (Form 497) (filed Sept. 23, 2002), *available at*
    http://www.sec.gov/Archives/edgar/data/1091439/000109143902000015/usazvips
    upploct02final.txt ............................................................................................ 14

Invesco, SEC No-Action Letter,
    No. 97-198-CC, 1997 WL 434442 (Aug. 5, 1997)........................................... 15

Wells Fargo, N.A., SEC No-Action Letter,
    1998 WL 146223 (Mar. 31, 1998) ................................................................... 15

IM Guidance Update No. 2014-03 (Feb. 2014), *available at*
    http://www.sec.gov/divisions/investment/guidance/im-guidance-2014-03.pdf
    (last accessed March 4, 2015) .......................................................................... 14

"Mutual Funds," *at*
    http://www.finra.org/Investors/SmartInvesting/ChoosingInvestments/MutualFund
    s (last accessed March 4, 2015) ...................................................................... 19

Defendants Davis Selected Advisers, L.P. ("Davis"), the investment adviser to the Davis

New York Venture Fund (the "Fund"), and Davis Selected Advisers-NY, Inc. ("Davis-NY"), the

Fund's subadviser, respectfully submit this Memorandum of Law in Support of their Motion to

Dismiss the Consolidated Amended Complaint, dckt. no. 48 (the "Complaint" or "Compl.").

## PRELIMINARY STATEMENT

Section 36(b) of the Investment Company Act of 1940, 15 U.S.C. §§ 80a-1 et seq.,

("ICA"), provides a limited remedy for a shareholder-plaintiff who can meet the difficult burden

of showing that her mutual fund's investment adviser charged a fee that "is so disproportionately

large that it bears no reasonable relationship to the services rendered **and** could not have been the

product of arm's-length bargaining."  Jones v. Harris Assoc. L.P., 559 U.S. 335, 351 (2010)

(emphasis added) (adopting standard from Gartenberg v. Merrill Lynch Asset Mgmt., Inc., 694

F.2d 923, 928 (2d Cir. 1982)).  Despite this daunting standard, plaintiffs have an incentive to

bring "a largely groundless" § 36(b) action based on its "in terrorem" effect.  Amron v. Morgan

Stanley Inv. Advisors Inc., 464 F.3d 338, 346 (2d Cir. 2006) (affirming 12(b)(6) dismissal).  The

case at bar is another example of this tactic.

This is the third meritless § 36(b) case brought against Davis within the past decade.

Plaintiffs this time primarily allege that the fees Davis charged the Fund for services as an

*investment adviser* were legally excessive because they were higher than the fees Davis charged

as a *subadviser* to other mutual funds managed by other financial firms (the "Subadvised

Funds").[1]  The Complaint also asserts that: (i) the Fund has recently underperformed its

benchmark index and peer funds, and certain Subadvised Funds terminated Davis as subadviser

---

[1]     Plaintiffs' counsel is pursuing other lawsuits based on this broad theory.  See, e.g., In re BlackRock Mutual Funds Advisory Fee Litig., 3:14-cv-01165 (D.N.J. filed Feb. 21, 2014); Goodman v. J.P. Morgan Inv. Mgmt., Inc., No. 2:14-cv-414 (S.D. Ohio filed May 5, 2014).

for underperformance; (ii) Davis received fees for managing other mutual funds; and (iii) the Fund's directors were insufficiently conscientious or careful mainly because they did not sever the Fund's relationship with Davis and because their Board service is a "part-time" job.

The Complaint should be dismissed with prejudice for two independent reasons.

First, this action is precluded by the Rule 12(b)(6) dismissal in Turner v. Davis Selected Advisers, L.P., Civ. No. 08-421 (D. Ariz. June 1, 2011), one of the prior unsuccessful § 36(b) cases against Davis. Turner rejected allegations similar to those raised here regarding the Fund's performance and directors, as well as comparisons between the Fund's fees and those of supposedly comparable mutual funds and asserted "fall out benefits." Because the advisory fee schedule is no higher than in Turner, and § 36(b) is a derivative claim, Turner precludes this action. The additional fee comparisons Plaintiffs propose here cannot defeat preclusion, especially because they are based on information that was available to the plaintiff in Turner.

Second, the complaint fails to satisfy this Circuit's rigorous approach to enforcing the pleading standards in § 36(b) cases. See Mintz v. Baron, No. 05 Civ. 4904 (LTS), 2009 WL 735140, at *2 (S.D.N.Y. Mar. 20, 2009).

Plaintiffs base their claim principally on comparisons of the fees that Davis charged financial firms to serve as a *subadviser* with the fees it charged the Fund to serve as the *investment adviser*. These apples-to-oranges comparisons have no probative value, as the two roles are fundamentally different. And, while Plaintiffs and their counsel appear to object broadly to the adviser-subadviser management structure for mutual funds, the SEC is well aware of, and has repeatedly approved, this arrangement.

Even assuming Plaintiffs' advisory/subadvisory fee comparison was probative, it would be insufficient here because, as reflected in materials of which the Court may readily take notice:

2

- The Fund paid essentially the same advisory fee as another mutual fund that replaced its prior investment adviser with Davis.  This underscores that the Fund's fee was within the arm's-length range.

- The Fund's advisory fee was low compared to that of similar funds managed by other advisers, as Morningstar and the <u>Turner</u> court both recognized.

- <u>Jones</u> holds that a § 36(b) plaintiff must plead cognizable facts other than a fee comparison with an adviser's non-mutual fund clients.  The Complaint fails to do so.

Allegations that the Fund underperformed are entitled to almost no weight and do not salvage the Complaint.  <u>See</u> <u>Amron v. Morgan Stanley Inv. Advisors Inc.</u>, 464 F.3d 338, 344 (2d Cir. 2006).  Moreover, Plaintiffs simply ignore the Fund's extraordinary long-term track record.

Plaintiffs' unremarkable assertion that Davis earned fees from its service to other mutual funds does not properly allege "fall out benefits," and in any event fails to suggest that the Fund's fees were legally excessive or unearned.

The Complaint's allegation that the directors were "part-time" is merely a pejorative characterization of the ICA's cornerstone requirement that a mutual fund board be comprised largely of independent directors.  Plaintiffs' assertions that the Board lacked independence and diligence and that it should have refused to renew the contract are circular boilerplate, and whether a board should renew an advisory contract is beyond the narrow scope of § 36(b).

Plaintiffs' § 47(b) claim fails for multiple reasons that require no extended discussion.

## STANDARD FOR MOTION TO DISMISS

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (internal quotation omitted).  "[C]onclusory statements" are "not entitled to the assumption of truth."  <u>Id.</u> at 678, 679.  And the pleaded facts must be more than "merely

3

consistent with a defendant's liability"; they must "allow[] the court to draw the reasonable inference that the defendant is liable." Id. at 678 (internal marks omitted).

On motions to dismiss, courts appropriately review "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (on a motion to dismiss). Here, those documents include prospectuses, statements of additional information ("SAIs"), Morningstar data, and investment management agreements.[2] These materials are attached as exhibits to the Declaration of Stephen G. Topetzes ("Declaration" or "Decl."), filed as part of this motion.

## BACKGROUND

**The Parties and the Fund**

Plaintiffs allegedly are Fund shareholders suing on its behalf.  Compl. ¶¶ 14-16.

The Fund, which is not a party, is a mutual fund that is a series of an investment company registered under the ICA.  Compl. ¶¶ 19-21.  A board of directors ("Board") oversees the Fund. Compl. ¶ 26.  Six of the eight directors are independent (they are not "interested persons" of Davis or the Fund under the ICA).[3]  See 15 U.S.C. § 80a-2(a)(19)(B).

Defendants Davis and Davis-NY are investment advisers registered under the Investment Advisers Act of 1940.  Compl. ¶ 24; Decl. Ex. A at 251.  As is typical in the fund industry, see Jones v. Harris, 559 U.S. 335, 338 (2010), Davis serves as the Fund's investment adviser pursuant to an investment advisory agreement (the "Advisory Agreement").  See Compl. ¶ 28;

---

[2]     See Mintz v. Baron, No. 05 Civ. 4904 (LTS), 2009 WL 735140, at *3 n.3 (S.D.N.Y. Mar. 20, 2009) (§ 36(b) case) (judicially noticing SEC filings showing new investment inflows in the subject mutual fund); Staehr v. Hartford Fin. Servs. Group, Inc., 547 F.3d 406, 424-26 (2d Cir. 2008) (media reports and regulatory filings); Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (SEC filings and other public records); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) ("documents possessed by or known to the plaintiff and upon which it relied in bringing the suit"); Acticon AG v. China North East Petroleum Holdings Ltd., 692 F.3d 34, 37, n.1 (2d Cir. 2012) (well-publicized stock prices); AmBase Corp. v. City Investing Co. Liquidating Trust, 326 F.3d 63, 72 (2d Cir. 2003) (court records to consider res judicata).

[3]     See Declaration Ex. A at 131-33.

Decl. Ex. C.  Davis-NY serves as the Fund's subadviser pursuant to a separate subadvisory

agreement ("Subadvisory Agreement"), the costs of which are borne by Davis.  See Compl. ¶ 28;

Decl. Ex. C ¶ 2; Decl. Ex. D ¶¶ 1, 10; Decl. Ex. B at 139.

Davis and Davis-NY provide management and investment advice, perform managerial

duties, furnish statistical, executive and clerical personnel, and provide bookkeeping, office

space, and equipment.  Decl. Ex. C ¶¶ 1, 3, 5; Decl. Ex. D ¶¶ 1, 6.  All of the Fund's officers and

its two management directors are Davis employees.  See Decl. Ex. B at 236-37.

**The Subadvised Funds and Davis's Other Investment Company Clients**

Davis served as a subadviser to the six Subadvised Funds, which had investment

objectives similar to that of the Fund.  Compl. ¶¶ 47-67.

The Subadvised Funds are sponsored and managed by financial firms (such as insurance

companies that offer mutual funds in connection with their life insurance or retirement products)

that are unaffiliated with Davis.  Compl. ¶¶ 48-51.  Each of these firms, in its role as investment

adviser, receives an investment advisory fee from the Subadvised Fund that it advises.  Compl. ¶

53.  Each financial firm then entered into a "subadvisory agreement" with Davis to invest the

assets of a Subadvised Fund, and pays Davis a portion of the advisory fee the financial firm

receives from the Subadvised Fund.  Compl. ¶¶ 56-57.  In each case, Davis provides subadvisory

services under the supervision of the financial firm, which has ultimate responsibility as the

investment adviser to each Subadvised Fund.  See, e.g., Compl. ¶ 55; Decl. Exs. E-J.

Davis also has served as investment adviser to two other investment companies not

identified in the Complaint, the Clipper Fund, Inc., a Delaware statutory trust ("Clipper Fund"),

and Selected American Shares, Inc. ("Selected Funds").  See Decl. Exs. K-N.  Davis replaced the

Clipper Fund's prior adviser on January 1, 2006.  Decl. Ex. O.  In 2005, Clipper Fund's

investment adviser lost key personnel and underwent a reorganization, resulting in the search for a new adviser.  Decl. Ex. P.  Clipper Fund's board examined various options and selected Davis over its reorganized adviser and others to take over as the Clipper Fund's adviser effective January 1, 2006.  Decl. Ex. O.  Davis was previously unaffiliated with the Clipper Fund.  Decl. Ex. Q at 4.

**Comparative Fees**

Plaintiffs allege the fees that Davis "receives (or received) for providing investment advisory services to the Subadvised Funds are lower than the fees paid by the Fund for the same or substantially the same services."  Compl. ¶ 70.  However, during the relevant time frame, the *investment advisory fee* the Fund paid Davis as investment adviser was *lower* than the *investment advisory fees* that the Subadvised Funds paid their own investment advisers:

| Fund | Effective Fee Rate |
| --- | --- |
| Davis New York Venture Fund | 0.50%[4] |
| John Hancock Fundamental Value Trust | 0.75% for 2013.[5] |
| EQ/Davis New York Venture Portfolio | 0.90%[6] |
| ING Davis New York Venture Portfolio | 0.75%[7] |
| AZL Davis New York Venture Fund | 0.70%[8] |
| MetLife Davis Venture Portfolio | 0.67%[9] |

---

[4]     Decl. Ex. A at 142; Decl. Ex. R. at 31; see also Decl. Ex. JJ at 35.

[5]     Decl. Ex. S at 3.

[6]     Decl. Ex. T at 3.

[7]     Decl. Ex. U at 2.

[8]     Decl. Ex. V at 3.  See also Decl. Ex. W.

[9]     Decl. Ex. X at 3, 9, 10.

| Columbia Variable Portfolio | 0.69%[10] |
|---|---|

Moreover, the Fund's advisory fee schedule and effective advisory fee rate were nearly identical to those of the Clipper Fund and Selected Funds for which Davis also serves as investment adviser.  See Decl. Exs. K at 7; L at 8, M at 6; and N at 3.

Morningstar also has rated the Fund's fees as "low" compared to those of its peers.[11]

### The Fund's Performance

Relying on selected Morningstar data, Plaintiffs allege that the Fund underperformed its benchmark index and comparable funds during certain recent periods.  Compl. ¶¶ 83-89.  But the Fund outperformed its benchmark and comparable funds during other relevant recent periods.[12]

Over longer periods, the Fund's performance has been stellar.  For example, it outperformed its benchmark, the S&P 500, in 33 of 35 rolling ten-year time frames and outperformed its peer group in 32 of 35 rolling ten-year time frames for periods ending December 31st, or each rolling period from inception through 2014.  Decl. Ex. JJ at 46.[13]

### Prior Section 36(b) Litigation Against Davis

Two courts have previously granted with prejudice 12(b)(6) dismissals of lawsuits alleging § 36(b) claims against Davis.  See Turner v. Davis Selected Advisers, L.P., Civ. No. 08-421 (D. Ariz. June 1, 2011), ECF No. 80 (order of dismissal); ECF No. 109 (partially granting defendants' motion to take judicial notice and denying plaintiff's Rule 59(e) motion) (March, 19,

---

[10]     Decl. Ex. Y at 3.

[11]     Decl. Exs. Z and KK.

[12]     Decl. Ex.  AA (Fund outperformed S&P 500 in 2013); Decl. Ex. JJ at 46 (Fund outperformed comparable funds in 1 and 2 year periods ending December 31, 2013).

[13]     The Fund did almost as well over rolling five-year periods, beating the S&P 500 in 29 of the 40 of them and its peer group in 32 of 40 for periods ending December 31st, or each rolling period from inception through 2014.  See Decl. Ex. JJ at 46; Decl. Ex. KK at 3.

2013), at Decl. Exs. CC & DD; In re Davis Selected Mut. Funds Litig., No. 04-cv-4186 (MGC),

2005 WL 2509732 at *3 (S.D.N.Y. Oct. 11, 2005).

The recent Turner case directly challenged the Fund's advisory fee (as well as other fees).

The district court issued a reasoned opinion applying the Supreme Court's decision in Jones v.

Harris and dismissed the action with prejudice.  See Turner v. Davis Selected Advisers, L.P.,

Civ. No. 08-421, at 13-17 (D. Ariz. June 1, 2011), at Decl. Ex. CC.  An appeal is currently

pending.  9th Cir. Dckt. No. 13-15742.

The Fund's advisory fee schedule is more favorable to the Fund now than it was during

part of the lengthy time period covered by the Turner action, as more favorable breakpoints are

now offered at a lower net asset level.[14]

## **ARGUMENT**

## **I.     THE TURNER DISMISSAL PRECLUDES THIS ACTION**

Issue preclusion bars a plaintiff from relitigating an issue that has already been fully and

fairly litigated in a prior proceeding.  Purdy v. Zeldes, 337 F.3d 253, 258 (2d Cir. 2003).[15]

Turner encompassed the same issue Plaintiffs seek to relitigate here: whether the Fund's

advisory fee rate, which has not increased since the Turner dismissal, is legally excessive under

§ 36(b).  The Turner court issued a thorough and thoughtful opinion considering and rejecting

allegations similar to those raised here.  See Decl. Ex. CC, Turner v. Davis Selected Advisers

L.P., Civ. No. 08-421 (D. Ariz. June 1, 2011), ECF No. 80.  These included allegations regarding

---

[14]     See Decl. Ex. EE at 265 and Ex. FF.  See also Decl. Exs. JJ at 35.

[15]     Issue preclusion applies when: (1) the issues in both proceedings are identical; (2) the issue in the prior proceeding was actually litigated and decided; (3) there was a full and fair opportunity for litigation in the prior proceeding; and (4) the issue previously litigated was necessary to support a valid, final judgment on the merits.  Id. Relatedly, claim preclusion bars litigation of any claim for relief that was available in a prior suit between the parties or their privies, whether or not the claim was actually litigated.  See, e.g., Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir.1998).

fees charged by comparable mutual funds, id. at 14-15, averments regarding the Fund's performance, id. at 14-15, allegations regarding supposed "fall out" benefits and the supposed large size and "excessive profitability" of defendants' fees, id. at 13-14, 15-16, and similar contentions concerning the composition and process of the Fund's board.  Id. at 16-17.  Turner also rejected a § 47(b) claim on a ground that (as demonstrated below) applies equally here.  Id. at 17-19.  Accordingly, the Turner court dismissed the action with prejudice.  Id. at 19.[16]

Plaintiffs allege no significant change in the facts since the Turner judgment.  The Turner dismissal therefore precludes the present action.  See Gartenberg v. Merrill Lynch Asset Mgmt. Inc. Trust, ("Gartenberg II") 573 F. Supp. 1293, 1299 (S.D.N.Y. 1983) ("An advisor would be entitled to the preclusive effects of a final judgment dismissing a claim that the advisory fee was excessive, if the costs and benefits to the advisor of the fee arrangement were no more favorable to the advisor in the subsequent suit than they were in the suit that was dismissed."), aff'd Gartenberg v. Merrill Lynch Asset Mgmt., Inc., 740 F.2d 190 (2d Cir. 1984).[17]

It makes no difference that Plaintiffs here offer certain additional allegations, principally that Davis charges the Fund more for advisory services than it charged the Subadvised Funds for subadvisory services.  Even setting aside that these allegations are meritless (as demonstrated below), issue preclusion applies regardless of whether a new plaintiff adduces additional evidence or otherwise purports to improve her complaint – particularly where, as here, the

---

[16]     The pending appeal in Turner does not affect the finality of the judgment for preclusion purposes.  See, e.g., United States v. Int'l Brotherhood of Teamsters, 905 F.2d 610, 620-21 (2d Cir. 1990).

[17]     The Gartenberg II plaintiff pointed to major changes since the first lawsuit, including that "the Manager's expenses… declined, while compensation increased by 25%," that "the Manager's fees have increased while the number of orders processed by the Broker has declined," and that the adviser made various misrepresentations. Gartenberg II, 573 F. Supp. at 1299.  Even with all these changed circumstances, the court held that the prior adjudication had "a strong effect on the present action due to the doctrine of stare decisis" and the findings of fact in the prior action were deemed "controlling in this case on all issues where a change in circumstances is not demonstrated by the parties."  Id. at 1300.

alleged new facts were in the public domain and available to the prior plaintiff.  See, e.g., In re
Sonus Networks, Inc. S'holder Deriv. Litig., 499 F.3d 47, 62-63 (1st Cir. 2007) (giving issue
preclusive effect to earlier dismissal in derivative action where facts were not alleged in original
complaint but original plaintiff could have obtained the information); Arduini ex rel. Int'l Game
Tech. v. Hart, 774 F.3d 622, 630 (9th Cir. 2014) ("if a party could avoid issue preclusion by
finding some argument it failed to raise in the previous litigation, the bar on successive litigation
would be seriously undermined") (citation and internal quotation marks omitted).[18]

The difference in the identity of the named plaintiffs in this and the Turner action is
similarly beside the point.  "[C]ourts within this district have long recognized the preclusive
effect of judgments in derivative actions upon subsequent actions brought by stockholders who
were not plaintiffs in the original action."  Henik ex rel. LaBranche & Co., Inc. v. LaBranche,
433 F. Supp. 2d 372, 380 (S.D.N.Y. 2006); Lerner v. Reserve Mgmt. Co., No. 80 Civ. 1238,
1981 WL 1641, at *2 (S.D.N.Y. June 17, 1981) (§ 36(b) lawsuit) ("The fact that different
shareholders are involved in bringing the derivative actions does not negate identity of parties."
Id. at *2.); Ashare v. Brill, 560 F. Supp. 18 (S.D.N.Y. 1983) (similar).[19]

Accordingly, Turner is binding on Plaintiffs here, see Henik ex rel. LaBranche & Co.,
433 F. Supp. 2d at 380, and this case should be dismissed with prejudice.

---

[18]    See also In re Bed Bath & Beyond Inc. Deriv. Litig., Civil Action No. 06-5107 (JAP), 2007 WL 4165389,
at *6 (D. N.J. Nov. 19, 2007) (applying preclusive effect to different claims regarding different time periods);
LeBoyer v. Greenspan, No. CV 03-5603-GHK (JTLx), 2007 WL 4287646, at *2-*4 (C.D. Cal. June 13, 2007)
(applying preclusive effect to all possible claims relating to restatement, whether or not previously pled).  See
generally Benjamin v. Coughlin, 905 F.2d 571, 576 (2d Cir. 1990) ("'substantial overlap' of evidence and
arguments" supported issue preclusion) (citing Restatement (Second) of Judgments § 27 comment c); Givens v.
N.Y.C., No. 11-civ-2568 (PKC)(JCF), 2012 WL 75027, at *6 (S.D.N.Y. Jan. 10, 2012) ("plaintiff does not avoid
[collateral estoppel] by adding factual allegations to her Amended Complaint" which were simply "further evidence
factually supporting an issue that is already precluded").

[19]    See also Kaplan v. Bennett, 465 F. Supp. 555 (S.D.N.Y. 1979).  While not subject to Fed. R. 23.1, a § 36(b)
action is a "private right of derivative action."  Operating Local 649 Annuity Trust Fund v. Smith Barney Fund
Mgmt., 595 F.3d 86, 96-98 (2d Cir. 2010) (citations and internal quotation marks omitted).

## II.     THE COMPLAINT FAILS TO STATE A § 36(b) CLAIM

Determining whether a plaintiff has surmounted the exacting "so disproportionately large" standard of § 36(b) "requires consideration of all relevant factors," Jones, 559 U.S. at 349, including the six "Gartenberg factors."[20]

Courts in this Circuit have been vigilant in dismissing § 36(b) complaints that failed to state a claim.  See Amron, 464 F.3d at 344-46 (affirming dismissal of § 36(b) complaints where plaintiffs had failed to allege "those facts *necessary* to a finding of liability"); Mintz v. Baron, No. 05 Civ. 4904 (LTS), 2009 WL 735140, at *2 (S.D.N.Y. Mar. 20, 2009) (collecting Circuit cases dismissing § 36(b) complaints; Amron requires courts to "test[] the specific factual allegations of section 36(b) complaints in relation to each of the Gartenberg factors").  Jones also cited with approval cases from various Circuits granting motions to dismiss.[21]

Plaintiffs unsuccessfully attempt to allege a § 36(b) case based on assertions concerning just four factors: comparative fees, performance, fall out benefits, and director diligence.

---

[20]     These are: (i) the nature and quality of services provided by the investment adviser and its affiliates; (ii) the profitability of the fund to the adviser and its affiliates; (iii) any fall out benefits (i.e., other income) the adviser would not have received but for managing the fund; (iv) whether the adviser is sharing any economies of scale realized in managing the fund; (v) comparative expense ratios and advisory fees; and (vi) the directors' care and conscientiousness.  See, e.g., Jones, 559 U.S. at 344-45 & n.5, 348, 351-52.

[21]     Jones cited the following cases granting motions to dismiss: Amron, 464 F.3d 338; Krantz v. Prudential Invs. Fund Mgmt. LLC, 305 F.3d 140 (3d Cir. 2002); Migdal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321 (4th Cir. 2001); In re Franklin Mut. Funds Fee Litigation, 478 F. Supp. 2d 677 (D. N.J. 2007); In re AllianceBernstein Mut. Fund Excessive Fee Litig., No. 04-Civ. 4885 (SWK), 2006 WL 1520222 (S.D.N.Y. May 31, 2006); Yameen v. Eaton Vance Distributors, Inc., 394 F. Supp. 2d 350 (D. Mass. 2005).  In other lawsuits, plaintiffs' counsel has cited R. W. Grand Lodge of F. & A.M. of Penn. v. Salomon Bros. All Cap Value Fund, 425 F. App'x 25 (2d Cir. 2011).  Grand Lodge is inapposite.  It involved a scheme in which the investment adviser recommended that the mutual funds contract with an affiliate of the adviser to serve as transfer agent without fully disclosing to the fund's board that most of the work was to be done under a subcontract arrangement that the adviser had negotiated with the funds' existing third-party transfer agent at steeply discounted rates.  Id. at 30 & n.1.  Rather than passing along the substantial fee discount to the mutual funds, the adviser, through the affiliated transfer agent, took most of the discount for itself.  Id.  The adviser "knowingly inflated the price of the transfer agent services" provided to the funds and "pocketed the difference between" what the adviser charged the funds and what the adviser paid the third party.  Id.  at 31.  Plaintiffs do not allege a similar scheme here, and their baseless theory that there is no meaningful difference between advisory and subadvisory services is hardly comparable in content or specificity.

### A.  Plaintiffs' Comparative Fee Allegations Are Inapt and Insufficient to State a Claim

#### 1.  Advisory Fees and Subadvisory Fees Are Not Comparable

The fees a mutual fund investment adviser charges its other clients may be probative in a § 36(b) case – but only when the different clients receive comparable services.  <u>Jones</u>, 559 U.S. at 350 ("courts must reject" fee comparisons "[i]f the services rendered are sufficiently different").  Plaintiffs nonetheless predicate their case almost entirely on the type of "inapt comparison" that the Supreme Court forbade in <u>Jones</u>.  559 U.S. at 350.

Plaintiffs contend that because the *advisory* fee the Fund paid Davis exceeded the *subadvisory* fees other institutions paid Davis for managing assets in their Subadvised Funds, Compl. ¶¶ 5, 70-71, the Fund's higher advisory fee must be "excessive."  Compl. ¶¶ 5-6, 42-73.

Plaintiffs attempt to justify the comparison by arguing that Davis uses the same portfolio managers (the Large Cap Value Team), Compl. ¶¶ 36, 61, employs substantially the same investment strategy using the same research and technology, Compl. ¶¶ 63-67, and uses the same compliance personnel, Compl. ¶ 69, in addition to arguing that Davis undertook certain similar contractual duties for both the Fund and for the Subadvised Funds.  Compl. ¶¶ 59-60.  On that basis, the Complaint concludes that Davis provided "the same or substantially the same" advisory services to both the Fund and to the Subadvised Funds.  Compl. ¶ 58; <u>see also</u> Compl. ¶¶ 47-79.

Plaintiffs, however, do not allege that the *advisory fee* the Fund pays Davis is higher than the *advisory fees* the Subadvised Funds pay to their own investment advisers.  Nor can they.  As noted above in the Background section, the Fund's advisory fee is lower than the advisory fees of all the Subadvised Funds.  Rather than attempting an "apples-to-apples" comparison, Plaintiffs

instead contrast the *advisory* fee paid by the Fund with the *subadvisory* fees paid by the investment advisers of the Subadvised Funds.

This comparison is meaningless because Davis serves in different capacities with respect to the Funds and the Subadvised Funds.  As Plaintiffs allege, Davis and Davis-NY "serve as the Fund's investment advisers," Compl. ¶ 24, whereas "Davis acts as a so-called 'subadviser'... to each Subadvised Fund."  Compl. ¶ 56.  The distinction is important.  "[I]nvestment advisers and subadvisers perform distinct services," and these "differences ... alone justify" different fee arrangements.  Hoffman v. UBS-AG, 591 F. Supp. 2d 522, 540 (S.D.N.Y. 2008).  See also Gartenberg v. Merrill Lynch Asset Mgmt., Inc., 694 F.2d 923, 929 n.2 (2d Cir. 1982) (typically, investment advisers and their affiliates "manage the fund's portfolio ***and*** furnish "some, and in certain cases, virtually all of the nonadvisory services necessary to [the fund's] operation").

Davis contracted directly with the Fund to provide its services as investment adviser, is paid by the Fund, and provides the full range of services required to run the Fund, overseen only by the Fund's Board.  See Compl. ¶¶ 26, 28; Decl. Ex. C at ¶¶ 1-2.

In contrast, as a subadviser Davis has a more limited role.  Davis does not contract with Subadvised Funds directly but instead with the financial firms that serve as the investment advisers to the Subadvised Funds.  Compl. ¶¶ 51, 56; see Decl. Exs. E-J.  The Subadvised Funds are not parties to those contracts.  Those contracts require Davis to provide a narrower range of services under the supervision of the Subadvised Funds' investment advisers.[22]

The Complaint also fails to allege facts comparing the potential liabilities assumed by an investment adviser and subadviser.  Such a comparison further undermines Plaintiffs' case.  The

---

[22]     See, e.g., Decl. Ex. G at ¶ 3; Decl. Ex. E at ¶¶ 1(a)(i), 2.  For example, in the case of the Columbia Subadvised Fund, the subadviser's duties are "[g]enerally … limited to asset management and related recordkeeping services."  Decl. Ex. Y at 9.  See also Decl. Ex. F.

adviser's broader role, as well as the fact that it furnishes the Fund officers and management

directors, subjects it to greater legal responsibility and risk involving issues such as registration

statement disclosure, fund management, pricing, and operational errors.[23]  Cf. Jones, 559 U.S. at

350 n.8 (citing with approval In re AllianceBernstein Mut. Fund Excessive Fee Litigation, No.

04 Civ. 4885 (SWK), 2006 WL 1520222, at *2 (S.D.N.Y. May 31, 2006), for the proposition

that higher fee paid by mutual fund client "resulted from different services and different

liabilities assumed").  These risks are heightened by the fact that (as in most cases) the adviser

rather than the subadviser employs the chief compliance officer mandated by ICA Rule 38a-1, 17

C.F.R. § 270.38a-1(a)(4), and has primary responsibility for risk management on a day-to-day

basis.[24]

　　　　Plaintiffs and their counsel broadly attack adviser-subadviser management structures for

mutual funds.  But over nearly two decades, the SEC has approved as "necessary or appropriate

in the public interest and consistent with the protection of investors," 15 U.S.C. § 80a-6(c), more

than *two hundred* exemptive applications authorizing "manager of manager" arrangements

without the usual requirement that shareholders vote on a change in subadviser.[25]  A central

rationale for these exemptive orders is that a subadviser in "manager of manager" funds such as

---

[23]　　　See, e.g., 15 U.S.C. § 77o(a); 15 U.S.C. § 78t(a); 15 U.S.C. § 80a-47(a) (controlling person provisions of
the federal securities laws); Bellikoff v. Eaton Vance Corp., 481 F.3d 110, 116 (2d Cir. 2007) (noting that ICA § 42,
15 U.S.C. § 80a-41, "explicitly provides for enforcement of all ICA provisions by the SEC through investigations
and civil suits for injunctions and penalties").

[24]　　　See, e.g., Decl. Ex.B at 131; Decl. Ex. GG at 4 (The adviser "has primary responsibility for the funds' risk
management on a day-to-day basis as part of its overall responsibilities"); Decl. Ex. HH at 4; Decl. Ex. II at 3.

[25]　　　See IM Guidance Update No. 2014-03 (Feb. 2014), *available at*
http://www.sec.gov/divisions/investment/guidance/im-guidance-2014-03.pdf (last accessed March 4, 2015).  See
also USAllianz Variable Insurance Products Trust and USAllianz Advisers, LLC, Investment Co. Act Release No
25715, 67 FED. REG. 167, 55286 (Aug. 28, 2002); USAllianz Variable Insurance Products Trust, Supplement (Form
497) (filed Sept. 23, 2002) (notice of grant of exemptive relief), *available at*
http://www.sec.gov/Archives/edgar/data/1091439/000109143902000015/usazvipsupploct02final.txt (last accessed
March 05, 2015).

the Subadvised Funds is analogous to an individual portfolio manager who may be terminated at

the discretion of the adviser, while the investment adviser is the investment company's principal

service provider.[26]  The SEC similarly has granted no-action relief to entities in an affiliated

adviser-subadviser management structure.[27]

Plaintiffs should not be permitted to use repetitive § 36(b) lawsuits to vent their broad

disagreements with a common, SEC-approved fund management structure.  See Amron, 464

F.3d at 342-44 (rejecting § 36(b) complaint that "rel[ied] heavily on generalities about

deficiencies in the securities industry, and statements made by industry critics and insiders").

### 2. Plaintiffs' Inapt Fee Comparison Is Insufficient on Its Own Terms

Equating Davis's adviser and subadviser roles is just the type of "inapt comparison" the

Supreme Court rejected in Jones.  559 U.S. at 350.  But even accepting arguendo that Plaintiffs

had adequately alleged that Davis provided similar services to the Fund and the Subadvised

Funds (which they plainly have not), this would not be enough to state a § 36(b) claim here.

Before § 36(b) was enacted, investment advisers routinely charged mutual funds more

than they charged institutional clients.  See Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 537

(1984).  Among the reasons for such a differential is that (as Plaintiffs acknowledge, see Compl.

¶¶ 51, 57, 60, 111) investment company investment advisers typically sponsor the fund.  They

therefore bear the corresponding entrepreneurial risks.[28]

---

[26]    See In re Exemption from Shareholder Approval for Certain Subadvisory Contracts, Release No. 48683, Release No. 33-8312, Release No. 34-48683, Release No. IC - 26230, 81 S.E.C. Docket 939, 2003 WL 22423216, at *6 (Oct. 23, 2003).

[27]    See, e.g., Invesco, SEC No-Action Letter, No. 97-198-CC, 1997 WL 434442 (Aug. 5, 1997); Wells Fargo, N.A., SEC No-Action Letter, 1998 WL 146223 (Mar. 31, 1998).

[28]    See, e.g., Daily Income Fund, 464 U.S. at 536; Gartenberg v. Merrill Lynch Asset Management, Inc., 528 F. Supp. 1038, 1067 (S.D.N.Y. 1981), aff'd, 694 F.2d 923 (2d Cir. 1982) (creating and managing a mutual fund is an entrepreneurial activity involving risk).

Section 36(b) did not categorically prohibit such fee differences.  To the contrary, the Supreme Court *rejected* the plaintiffs' basic contention that "a fiduciary may charge its controlled clients no more than its independent clients."  Jones, 559 U.S. at 350.  As Jones explained, a court must take account of the "different markets for advisory services."  Id. at 350 n.8.  Thus, "[e]ven if the services provided and fees charged to an independent fund are relevant," the ICA "does *not* necessarily ensure fee parity between mutual funds and institutional clients."  Id. at 350 (emphasis added).  Against this backdrop, Jones provided additional instructions that foreclose Plaintiffs' claim for three independent reasons.

First, plaintiffs continue to "bear the burden in showing that fees are beyond the range of arm's-length bargaining."  Id., at 350 n.8.  This applies at the pleading stage.  See Amron, 464 F.3d at 344 (plaintiff must allege facts "sufficient to establish liability").  Thus, it is insufficient to plead that a Fund did not receive the "best deal possible."  Krinsk v. Fund Asset Mgmt., Inc., 875 F.2d 404, 409 (2d Cir. 1989).  Nonetheless, Plaintiffs merely allege that the Fund's fee was higher than some of Davis's independent clients.  As noted above, however, the Fund's advisory fee was essentially identical to that of another relevant Davis client: the Clipper Fund, an investment company that had no affiliation with Davis before replacing its previous investment adviser with Davis in 2006.  This underscores that the advisory fees were within the range of arm's-length bargaining.

Second, while courts should not rely too heavily on comparisons with fees charged to mutual funds by other advisers, see Jones, 559 U.S. at 350, Amron, 464 F.3d at 245, it is noteworthy that Plaintiffs have failed to allege where on the range of comparable mutual fund fees the Fund's advisory fee falls.  The omission is unsurprising.  According to Morningstar (on which Plaintiffs rely) the Fund's expense ratio is "low," earning it positive marks from

Morningstar for fees.  See Decl. Ex. Z; Decl. Ex. KK at 3-4.  See also Turner v. Davis Selected

Advisers, L.P., Civ. No. 08-421, at 16 (D. Ariz. June 1, 2011), ECF No. 80 (the Fund "has

breakpoints that are more beneficial to shareholders than other comparable funds"), at Decl. Ex.

CC.

Third, plaintiffs must do more than allege that a Fund has paid more than institutional

clients for an adviser's services.  "Only where plaintiffs have shown a large disparity in fees that

cannot be explained by the different services in addition to other evidence that the fee is outside

the arm's-length range will trial be appropriate."  Jones, 559 U.S. at 350 n.8.  The Complaint's

other sparse allegations do nothing to move Plaintiffs' claims "across the line from conceivable

to plausible."  Iqbal, 556 U.S. at 680 (citation and internal quotation marks omitted).[29]

### B.  Plaintiffs' Allegations Regarding the Fund's Recent Underperformance Are of Limited Relevance and Ignore Davis's Long-Term Track Record

The Complaint's other principal theme is that the advisory services provided by Davis

supposedly were of "low quality," Compl. ¶¶ 7, 83, because the Fund's performance lagged the

Fund's benchmark (the S&P 500 Index) "and the investment performance of other, comparable

mutual funds over the last 10 years."  Compl. ¶¶ 8, 85.  The Complaint adds that the Fund's

underperformance during the same time period resulted in Morningstar assigning the Fund a

performance ranking of one star for the three year period ending May 31, 2014 (meaning that the

Fund's performance ranked in the bottom 10% of its Morningstar category) and two stars for the

five- and ten-year periods ending on May 31, 2014 (meaning that the Fund's performance ranked

in the bottom 32.5% of its Morningstar category).  Compl. ¶¶ 87-95.

---

[29]    Cf. Gallus v. Ameriprise Fin., Inc., 675 F.3d 1173, 1180-81 (8th Cir. 2012) (affirming summary judgment where plaintiffs adduced no adequate evidence beyond comparison with fees charged institutional clients).

The Court should swiftly reject these allegations in light of <u>Amron</u>, 464 F.3d 338 (2d Cir. 2006). <u>Amron</u> affirmed the 12(b)(6) dismissal of a pair of § 36(b) complaints that "ar[o]se out of the poor performance of two mutual funds," <u>Amron</u>, 464 F.3d at 340, an actively managed fund and an index fund. As here, the <u>Amron</u> plaintiffs alleged that the actively managed fund lagged its benchmark (the S&P 500 index) for the preceding one-, five-, and ten-year periods. <u>See, e.g.,</u> <u>id.</u> at 341. The <u>Amron</u> plaintiffs also alleged that the index fund underperformed. Its "annual return between 1995 and 2002 was 4.11%, while the return of the S&P 500 Index… was 6.07%." <u>Id.</u> at 342. Further, the index fund "was in the bottom 20% of all comparable funds during both the one-year and five-year periods ended July 31, 2003." <u>Id.</u> (internal quotation marks omitted).

The Second Circuit rejected plaintiffs' argument that these allegations showed that the fees were excessive. Following <u>Migdal v. Rowe Price-Fleming Int'l, Inc.</u>, 248 F.3d 321 (4th Cir. 2001), <u>Amron</u> recognized that allegations of underperformance shed limited light on the nature and quality of the services provided by an adviser. <u>Amron</u>, 464 F.3d at 344 (<u>citing</u> and <u>quoting</u> <u>Migdal</u>). As <u>Migdal</u> explains, "[i]nvesting is not a risk-free endeavor." <u>Migdal</u>, 248 F.3d at 327. In addition, "[e]ven the most knowledgeable advisers do not always perform up to expectations, and investments themselves involve quite different magnitudes of risk. Furthermore, investment results are themselves cyclical." <u>Id.</u>

Under <u>Amron</u> "allegations of underperformance alone are insufficient to prove that an investment adviser's fees are excessive." <u>Amron</u>, 464 F.3d at 344, <u>quoting</u> <u>Migdal</u>, 248 F.3d at 327. <u>Amron</u> noted that the index fund had underperformed 80% of its peers. 464 F.3d at 344. This was a significant shortfall because (unlike an actively managed portfolio like the Fund's) managing an index fund that "seeks merely to mimic the return of the S&P 500 Index" is "not so

demanding on the adviser's expertise." Id.  Nonetheless, plaintiffs' underperformance and other

assertions "failed to allege any facts pertinent to the relationship between fees and services." Id.

Plaintiffs' underperformance allegations are substantially similar to those found

insufficient in Amron and should be dismissed for the same reasons.  The Turner court also

rejected similar allegations regarding Davis's performance.  See Turner v. Davis Selected

Advisers, L.P., Civ. No. 08-421, at 13-17 (D. Ariz. June 1, 2011), ECF No. 80.

Moreover, as the public record available to the Court demonstrates, an attack on Davis's

services based on performance has no merit.  When viewed over a longer and more meaningful

investment horizon (particularly given that the Fund's objective is "long-term growth of capital,"

Compl. ¶ 32), the Fund has significantly outperformed its benchmarks and comparable funds,

including outperforming the S&P 500, in 33 of 35 rolling ten-year time frames and its peer group

in 32 of 35 rolling ten-year time frames, for periods ending December 31st, for each rolling

period from inception through 2014.  See Decl. Ex. BB, p. 44; Decl. Ex. JJ at 46.

This is an extraordinary track record.  As the Financial Industry Regulatory Authority,

Inc. ("FINRA") has explained, "[i]n any given year, most actively managed funds do not beat the

market" and "very few actively managed funds provide stronger-than-benchmark returns over

long periods of time, including those with impressive short term performance records."[30]

### C.  Plaintiffs' Conclusory "Fall Out" Benefit Allegations Add Nothing

Plaintiffs assert that fees Davis earns from managing assets for other clients are "fall out

benefits."  Compl. ¶¶ 80-82.[31]

"[F]all-out financial benefits" are "those collateral benefits that accrue to the adviser

---

[30]     See "Mutual Funds," at http://www.finra.org/Investors/SmartInvesting/ChoosingInvestments/MutualFunds
(last accessed March 4, 2015).

[31]     Any supposed fall out benefits have decreased since Turner was commenced.  Compl. ¶¶ 9, 115-118.

because of its relationship with the mutual fund." Jones, 559 U.S. at 344 n.5. That Davis's role as the Fund's adviser allowed it to "compete more effectively," Compl. ¶ 82, in attracting additional clients fails to satisfy the "but for" test for fall out benefits. See In re American Mut. Funds Fee Litigation, No. CV 04-5596 GAF (RNBx), 2009 WL 5215755, at *53 (C.D. Cal. Dec. 28, 2009) ("Fall-out benefits" are profits to the adviser that "would not have occurred but for the existence of the Fund"), quoting Krinsk v. Fund Asset Mgmt., 715 F. Supp. 2d 472, 495 (S.D.N.Y. 1988), aff'd 875 F.2d 404 (2d Cir. 1989). See also Krinsk, 875 F.2d at 411.

More fundamentally, Plaintiffs do not even attempt to allege that the separate fees Davis received for serving separate clients were legally excessive. And "[i]f the fee for each service viewed separately is not excessive in relation to the service rendered, then the sum of the two is also permissible." Meyer v. Oppenheimer Mgmt. Corp., 895 F.2d 861, 866 (2d Cir. 1990).

In any event, as the Turner court and many others have recognized, allegations that an adviser receives significant or even very large fees for its services from one or more clients add little or nothing to an excessive fee claim. See Turner v. Davis Selected Advisers, L.P., Civ. No. 08-421, at 16 (D. Ariz. June 1, 2011), at Decl. Ex. CC ("Mere allegations that the fund was 'large' and that there were economies of scale to be realized are insufficient").[32]

---

[32]   See also In re Salomon Smith Barney Mut. Fund Fees Litig., 528 F. Supp. 2d 332, 339 (S.D.N.Y. 2007), affirmed in relevant part, vacated on other grounds, 425 F. App'x 25 (2d Cir. June 9, 2011) ("Plaintiffs cannot meet their burden simply by pointing to the size of the funds and their rates of growth. There must be 'allegations regarding the costs of performing fund transactions or the relationship between such costs and the number of transactions performed.'") (citation omitted); In re Franklin Mut. Funds Fee Litig., 478 F. Supp. 2d at 687 (dismissing complaint alleging that fund "ranked 18[th] out of 50 in terms of total fees charged to the Funds, taking in over $251.3 million in fees"; "[i]f plaintiffs were allowed to state a § 36(b) claim based upon such paltry allegations, then any fund that grew over time while not simultaneously lowering its fees would be subject to suit under the ICA. This cannot be allowed."); In re Goldman Sachs Mut. Funds Fee Litig., No. 04 Civ. 2567(NRB), 2006 WL 126772, at *9 (S.D.N.Y. Jan. 17, 2006); Amron, 464 F.3d at 345; Gartenberg, 694 F.2d at 928 ("cost-plus" contract **not** required); Krinsk v. Fund Asset Mgmt., 875 F.2d 404, 411 (2d Cir. 1989). Similarly, even allegations or evidence of significant profitability (which the Complaint here does not even offer) have been repeatedly rejected. See, e.g., Meyer v. Oppenheimer Mgmt. Corp., 707 F. Supp. 1394, 1401 (S.D.N.Y. 1988) (pre-tax margins up to 89%, including certain distribution expenses); Schuyt v. Rowe Price Prime Reserve Fund, Inc., 663 F. Supp. 962, 979 (S.D.N.Y. 1987), aff'd, 835 F.2d 45 (2d Cir. 1987) (pre-tax margins up to 77.3%); Kalish v. Franklin Advisers, Inc., 742 F. Supp. 1222, 1236, 1250 (S.D.N.Y. 1990) (post-tax margin up to 37.8% "neither requires nor supports a

**D.  Plaintiffs' Allegations Regarding the Directors Are Irrelevant and Meritless**

Plaintiffs' remaining attempt to allege a § 36(b) claim is a series of boilerplate allegations regarding the Board's composition and process in reviewing the fees.  Compl. ¶¶ 96-109.

Because Plaintiffs failed to plausibly allege excessive fees, it is unnecessary to consider their allegations regarding the directors.  At most, such allegations merely affect the degree of deference accorded the Board's decision.  They cannot compensate for Plaintiffs' inability to plead facts plausibly showing that the amount of the fee was excessive.  See Jones, 559 U.S. at 352 ("Section 36(b) is sharply focused on the question of whether the fees themselves were excessive") (internal citations and quotation marks omitted); Migdal, 248 F.3d at 328 (same); Gallus v. Ameriprise Fin., Inc., 675 F.3d 1173, 1180 n.4 (8th Cir. 2012) (a "defective [board] process" does **not** imply an "excessive fee") (emphasis added).

In any event, Plaintiffs' claims are further undermined by their allegations that the Fund's disinterested directors approved the fees.  See Compl. ¶ 98; Jones, 559 U.S. at 339-40, 348-49.

The ICA *presumes* that non-affiliated directors "are disinterested" and "a plaintiff's burden to overcome this presumption is a heavy one."  Amron, 464 F.3d at 344 (citation and internal quotation marks omitted, emphasis added).

Plaintiffs come nowhere close to carrying their heavy burden.

Plaintiffs allege that the directors serve on the boards of 12 other Davis-advised funds. Compl. ¶ 100.  But, as the Second Circuit, the Turner Court, and many other courts have recognized, service on multiple boards in a mutual fund family does not suggest a lack of independence.  Indeed, it is a prevailing and (in the view of many) beneficial, industry practice. See Migdal, 248 F.3d at 330-331 (multiple board service is "the prevailing practice in the

---

finding [of excessiveness]").

industry" and offers a number of arguable benefits); Amron, 464 F.3d at 345; Turner v. Davis

Selected Advisers, L.P., Civ. No. 08-421, at 17 (D. Ariz. June 1, 2011), ECF No. 80 (similar).

Plaintiffs further assert that the board service is a "part-time job" for the Fund's directors.

Compl. ¶ 99.  This allegation fails as well.  See, e.g., Amron, 464 F.3d at 345 (allegations that

directors received compensation and "serve[d] on the boards of many other mutual funds,

businesses, and charitable organizations" were "insufficient as a matter of law" to call into

question the independence and conscientiousness of the directors).  A board is entrusted with

oversight – not day-to-day management of a company.  See generally Stone ex rel. AmSouth

Bancorporation v. Ritter, 911 A.2d 362 (Del. 2006).  Thus, outside directors characteristically

"are **not** full-time employees of the corporation."  Lanza v. Drexel & Co., 479 F.2d 1277, 1306

(2d Cir. 1973) (citation omitted, emphasis added).  Not only is there "a general consensus that

[such] outside directors… are desirable," id., but the ICA specifically mandates that a fund's

board consist at least in significant part of independent directors.  See Jones, 559 U.S. at 339.

This requirement is the "cornerstone" of the ICA's efforts to check conflicts of interest.  Id.

Plaintiffs' additional allegation that the Fund's independent directors "are employed full-time in

senior-level positions in management, finance, or law, or serve on [other] boards of directors"

(Compl. ¶ 99),[33] only underscores the Board's broad experience and strong qualifications.

Plaintiffs also complain that, in reviewing the Funds' advisory fees, the Board relied on

information and analysis prepared by Davis.  Compl. ¶ 101.  But, "[o]ne would expect any

conscientious director to request information from management and staff on the day-to-day

operations for which they are responsible."  Migdal, 248 F.3d at 331.  "The ICA itself approves

---

[33]     See also Decl. Ex. A at 130-33.

this very practice."  Id. (citing 15 U.S.C. § 80a-15(c)); Jones, 559 U.S. at 348.  Moreover, Plaintiffs do not allege that the Board relied only on information prepared by Davis.[34]

The Complaint nowhere alleges facts showing that the material the Board reviewed was deficient in any respect.  Instead, Plaintiffs offer only circular allegations suggesting that, because the Subadvised Funds purportedly paid lower fees, Compl. ¶ 105, the Board's process must have been inadequate (e.g., the Board must have devoted insufficient time to reviewing the fees, Compl. ¶ 98, or failed to review additional (unspecified) "information or analyses," Compl. ¶ 102, or "accepted Davis's representations," Compl. ¶ 103).  These conclusory averments are "not entitled to the assumption of truth."  Iqbal, 556 U.S. at 697.  Moreover, as demonstrated above, the advisory fees paid by the Subadvised Funds are *higher* than the fees paid by the Fund. Thus, if anything, the fees paid by the Subadvised Funds reinforce the conclusion that the Fund's directors succeeded in negotiating advisory fees reflective of the same arm's-length bargaining that Plaintiffs admit has occurred between Davis and the Subadvised Funds.  Cf. Compl. ¶¶ 110, 111, 113, 114; see In re Scudder Mut. Funds Fee Litig., No. 04 Civ. 1921 (DAB), 2007 WL 2325862, at *18 (S.D.N.Y. Aug. 14, 2007).

Plaintiffs finally assert that, because the Fund underperformed during certain recent periods, and given that Davis was replaced as subadviser to certain Subadvised Funds, Compl. ¶¶ 115-118, the Board must have failed to "take[] appropriate action."  Compl. ¶ 106.  Plaintiffs suggest that the Board could have solicited proposals from other investment advisers, or terminated Davis as adviser.  Compl. ¶¶ 107, 115.  But such assaults on the Board's business judgment in selecting an adviser go beyond the limited scope of § 36(b).  See Green v. Nuveen

---

[34]     As reflected in the annual report of the Funds, the Board reviewed, among other things, fee-related information provided by unaffiliated third-party sources, including information independently compiled and prepared by Lipper, Inc., on the Fund's fees, expenses, and performance as compared with a peer group of funds as determined by Lipper.  See Decl. Ex. BB at 44; Decl. Ex. JJ at 46.

Advisory Corp., 295 F.3d 738, 744 n.9 (7th Cir. 2002) (supposed "fund mismanagement issues" outside the purview of § 36(b)); Migdal, 248 F.3d at 329 (similar).  Regardless, the Board's decision to retain Davis was eminently reasonable given Davis's exceptional long-term track record, which the Board appropriately considered,[35] and the fact that Fund shareholders invested with the expectation of having their money managed by Davis.  See Gartenberg v. Merrill Lynch Asset Mgmt., Inc., 694 F.2d 923, 929 n.2 (2d Cir. 1982) (fund directors are properly reluctant to replace an adviser given that "many shareholders may have invested in the fund on the strength of the adviser's reputation" and "rely on" the adviser's service).[36]

## III.   PLAINTIFFS' SECTION 47(b) CLAIM MUST BE DISMISSED

The Complaint's § 47(b) claim (Compl. ¶ 129), should be dismissed for multiple reasons:

1.      Section 47(b) authorizes a limited rescission remedy only for contracts involving "a violation of the ICA."  15 U.S.C. § 80a-46(b).  Plaintiffs have alleged no such violation.

2.      Even assuming counterfactually that Plaintiffs had stated an adequate § 36(b) violation, they cannot circumvent the carefully circumscribed limits of § 36(b) by adding a § 47(b) claim seeking additional or different remedies.  See, e.g., Steinberg v. Janus Capital Mgmt. LLC, 457 F. App'x 261, 267 (4th Cir. Dec. 2, 2011).

3.      To the extent that Plaintiffs assert a separate claim for violations of § 47(b), they cannot do so because § 47(b) "creates a remedy rather than a distinct cause of action or basis of liability."  Santomenno v. John Hancock Life Ins. Co., 677 F. 3d 178, 187 (3d Cir. 2012).

---

[35]      See Decl. Ex. BB at 42-44; Decl. Ex. JJ at 45-46.

[36]      In another repetitive variation, Plaintiffs allege that the advisory agreement should have included a "most favored nation provision."  Compl. ¶ 104.  Of course, no such provision is required.  See Krinsk, 875 F.2d at 409 ("best deal" not required).  And as already noted, the Fund's management fee was lower than those of the Subadvised Funds.  Similarly, notwithstanding Plaintiffs' insinuation (Compl. ¶ 108), an advisory agreement need not include a performance adjustment.  Moreover, due to the Fund's outperformance for many years, see Decl. Ex. BB at 44, the Fund may have paid a **higher** advisory fee in 2013 and much of its history if the advisory agreement had included a statutorily authorized fulcrum fee.  See 15 U.S.C. § 80a-205(b), 17 C.F.R. §§ 275.205-1, 205-2.

4.      Section 47(b) makes rescission available only to a "party" to that contract.  As non-parties to the contracts between the Fund and defendants, Plaintiffs are ineligible to seek relief under § 47(b) without complying with state law demand requirements and Fed. R. Civ. P. 23.1.  See Turner v. Davis Selected Advisers, L.P., Civ. No. 08-421, at 18 (D. Ariz. June 1, 2011), ECF No. 80; Hamilton v. Allen, 396 F. Supp. 2d 545, 558 (E.D. Pa. 2005).

## CONCLUSION

The Complaint should be dismissed with prejudice.

Dated: March 9, 2015                         Respectfully Submitted:
       New York, New York
                                             K&L GATES LLP


                                             By:   __/s/__Stephen G. Topetzes_____

                                             Jeffrey B. Maletta (*pro hac vice*)
                                             Stephen G. Topetzes (*pro hac vice*)
                                             Nicholas G. Terris
                                             Nicole A. Baker (*pro hac vice*)
                                             Amy J. Eldridge (*pro hac vice*
                                             **K&L Gates LLP**
                                             1601 K Street NW
                                             Washington, D.C. 20006
                                             Tel:    (202) 778-9000
                                             Fax:    (202) 778-9100
                                             Email: stephen.topetzes@klgates.com
                                                     jeffrey.maletta@klgates.com
                                                     nicholas.terris@klgates.com
                                                     nicole.baker@klgates.com
                                                     amy.eldridge@klgates.com

                                             Joanna A. Diakos
                                             Sarah Peck Kenney
                                             **K&L Gates LLP**
                                             599 Lexington Ave.
                                             New York, NY 10022
                                             Tel:     (212) 536-3900
                                             Fax:    (212) 536-3901
                                             Email: joanna.diakos@klgates.com
                                                     sarah.kenney@klgates.com

25

*Attorneys for Davis Selected Advisers, L.P., and
Davis Selected Advisers-NY, Inc.*