UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Gary A. Hebda and Deborah L. Hebda,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　vs.<br><br>Davis Selected Advisers, L.P., and<br>Davis Selected Advisers-NY, Inc.,<br><br>　　　　　　　　　Defendants. | 1:14-cv-4318 (LTS) (HBP)<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT**

Joanna A. Diakos
Sarah Peck Kenney
**K&L Gates LLP**
599 Lexington Ave.
New York, NY 10022
Tel:　(212) 536-3900
Fax:　(212) 536-3901
Email: joanna.diakos@klgates.com
　　　　sarah.kenney@klgates.com

Stephen G. Topetzes (*pro hac vice*)
Jeffrey B. Maletta (*pro hac vice*)
Nicholas G. Terris
Nicole A. Baker (*pro hac vice*)
Amy J. Eldridge (*pro hac vice*)
**K&L Gates LLP**
1601 K Street NW
Washington, D.C. 20006
Tel:　(202) 778-9000
Fax:　(202) 778-9100
Email: stephen.topetzes@klgates.com
　　　　jeffrey.maletta@klgates.com
　　　　nicholas.terris@klgates.com
　　　　nicole.baker@klgates.com
　　　　amy.eldridge@klgates.com

*Attorneys for Davis Selected Advisers, L.P., and Davis Selected Advisers-NY, Inc.*

**TABLE OF CONTENTS**

**Page(s)**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................2

I. THE <u>TURNER</u> DISMISSAL PRECLUDES THIS ACTION...............................................2

II. THE COMPLAINT FAILS TO STATE A § 36(b) CLAIM ................................................7

    A. Plaintiffs' Comparative Fee Allegations Are Inapt and Insufficient to State a Claim...................................................................................................8

        1. Advisory Fees and Subadvisory Fees Are Not Comparable........................8

        2. Plaintiffs' Inapt Fee Comparison Is Insufficient on Its Own Terms............9

    B. Plaintiffs' Allegations Regarding the Fund's Recent Underperformance Are of Limited Relevance and Ignore Davis's Long-Term Track Record ............10

    C. Plaintiffs' Conclusory "Fall Out" Benefit Allegations Add Nothing …………..11.

    D. Plaintiffs' Allegations Regarding the Directors Are Irrelevant and Meritless..................................................................................................................11

III. PLAINTIFFS' SECTION 47(b) CLAIM MUST BE DISMISSED .................................12

CONCLUSION................................................................................................................................13

**TABLE OF AUTHORITIES**

**CASES**

Arduini ex rel. Int'l Game Tech. v. Hart,
    774 F.3d 622 (9th Cir. 2014) ………………………………………………… 5, 6, 7

Alexander v. Sandoval,
    532 U.S. 275 (2001) ………………………………………………………………. 13

Amron v. Morgan Stanley Inv. Advisors Inc.,
    464 F.3d 338 (2d Cir. 2006) …………………………………………………… *passim*

Ashare v. Brill,
    560 F. Supp. 18 (S.D.N.Y. 1983) ………………………………………………….. 5

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ………………………………………………………………... 1

Benjamin v. Coughlin,
    905 F.2d 571 (2d Cir. 1990) ……………………………………………………... 3

Burks v. Lasker,
    441 U.S. 471 (1979) ……………………………………………………………... 6

Daily Income Fund, Inc. v. Fox,
    464 U.S. 523 (1984) ……………………………………………………………... 5

Gartenberg v. Merrill Lynch Asset Mgmt. Inc., ("Gartenberg II"),
    573 F. Supp. 1293 (S.D.N.Y. 1983), aff'd Gartenberg v. Merrill Lynch Asset Mgmt.,
    Inc., 740 F.2d 190 (2d Cir. 1984) ……………………………………………….. 2

Goodman v. J.P. Morgan Inv. Mgmt., Inc.,
    No. 2:14-cv-414, 2015 WL 965665 (S.D. Ohio Mar. 4, 2015) …………………. 7

Gorbaty v. Wells Fargo Bank, N.A.,
    No. 10-CV-3291 (NGG) (SMG), 2014 WL 4742509 (E.D.N.Y. Sept. 23, 2014) ……... 13

Harkins Amusement Enters., Inc. v. Harry Nace Co.,
    890 F.2d 181 (9th Cir. 1989) ……………………………………………………. 4

Henik ex rel. LaBranche & Co., Inc. v. LaBranche,
    433 F. Supp. 2d 372 (S.D.N.Y. 2006) …………………………………………... 5, 7

Hoffman v. UBS-AG,
 591 F. Supp. 2d 522 (S.D.N.Y. 2008) ……………………………………………………... 6

In re BlackRock Mut. Funds Advisory Fee Litig.,
 Civ. No. 14-1165 (FLW)(DEA), 2015 WL 1418848 (D.N.J. Mar. 27, 2015) ………….. 7

In re Goldman Sachs Mut. Funds Fee Litig.,
 No. 04 Civ. 2567, 2006 WL 126772 (S.D.N.Y. Jan. 17, 2006) …………………………. 7

In re Salomon Smith Barney Mut. Fund Fees Litig.,
 441 F. Supp. 2d 579 (S.D.N.Y.2006) …………………………………………………… 6

In re Scudder Mut. Funds Fee Litig.,
 No. 04–CV–1921 (DAB), 2007 WL 2325862 (S.D.N.Y. Aug. 14, 2007) ……………… 6

In re Sonus Networks, Inc. S'holder Deriv. Litig.,
 499 F.3d 47 (1st Cir. 2007) ……………………………………………………………… 6

Jones v. Harris Assoc. L.P.,
 559 U.S. 335 (2010) ……………………………………………………………… 1, 7, 12

Lawlor v. Nat'l Screen Serv. Corp.,
 349 U.S. 322 (1955) ……………………………………………………………………... 4

Lerner v. Reserve Mgmt. Co.,
 No. 80 Civ. 1238, 1981 WL 1641 (S.D.N.Y. June 17, 1981) …………………………… 5

Li v. Asphalt Green, Inc.,
 581 F. App'x 6, 7 (2d Cir. 2014) ………………………………………………………... 4

Migdal v. Rowe Price-Fleming Int'l, Inc.,
 248 F.3d 321 (4th Cir. 2001) …………………………………………………………... 12

Mintz v. Baron,
 No. 05 Civ. 4904 (LTS), 2009 WL 735140 (S.D.N.Y. Mar. 20, 2009) …………………. 7

NLRB v. United Techs. Corp.,
 706 F.2d 1254 (2d Cir. 1983) …………………………………………………………… 4

Olmsted v. Pruco Life Ins. Co. of N.J.,
 283 F.3d 429 (2d Cir. 2002) ………………………………………………………… 6, 13

Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt.,
 595 F.3d 86 (2d Cir. 2010) ……………………………………………………………. 1, 5-6

R. W. Grand Lodge of F. & A.M. of Penn. v. Salomon Bros. All Cap Value Fund,
    425 F. App'x 25 (2d Cir. 2011) ……………………………………………………….. 7

Ramallo Bros. Printing, Inc. v. El Día, Inc.,
    490 F.3d 86 (1st Cir. 2007) …………………………………………………………… 3, 4

Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.,
    893 F. Supp. 285 (S.D.N.Y. 1995) …………………………………………………….. 13

Reso v. Artisan Partners Ltd. P'ship,
    No. 11-CV-873-JPS, 2011 WL 5826034 (E.D. Wis. Nov. 18, 2011) …………………… 7

Richards v. Jefferson County, Ala.,
    517 U.S. 793 (1996) …………………………………………………………………... 5

Sins v. Janus Capital Mgmt., LLC,
    No. 04-cv-01647, 2006 WL 3746130 (D. Colo. Dec. 15, 2006) ………………………... 8

Storey v. Cello Holdings, L.L.C.,
    347 F.3d 370 (2d Cir. 2003) …………………………………………………………... 4

Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis,
    444 U.S. 11 (1979) …………………………………………………………………... 13

Turner v. Davis Selected Advisers, L.P.,
    Civ. No. 08-421 (D. Ariz. June 1, 2011) ………………………………………….. *passim*

W. Inv. LLC v. DWS Global Commodities Stock Fund, Inc.,
    705 F. Supp. 2d 281 (S.D.N.Y. 2010) ………………………………………………... 6

Wicks v. Putnam Inv. Mgmt., LLC,
    No. Civ.A. 04-10988-GAO, 2005 WL 705360 (D. Mass. Mar. 28, 2005) ……………… 6

Zehrer v. Harbor Capital Advisors, Inc.,
    No. 14 C 789, 2014 WL 6478054 (N.D. Ill. Nov. 18, 2014) …………………………. 7-8

**STATUTES**

15 U.S.C. § 80a-35(b) ("Section 36(b)" or "§ 36(b)") ……………………………………… *passim*

15 U.S.C. § 80a-46(b) ("Section 47(b)" or "§ 47(b)") ……………………………………… 1, 12

**RULES**

Fed. R. Civ. P. 12(b)(6) ……………………………………………………………….. 4, 5

**OTHER AUTHORITIES**

18 Charles A. Wright, Arthur R. Miller et al., Federal Practice and Procedure
   § 4417 (3d ed. 2002) ………………………………………………………….. 3

18 Charles A. Wright, Arthur R. Miller et al., Federal Practice and Procedure
   § 4425 (3d ed. 2002) ………………………………………………………….. 2

Restatement (Second) of Judgments § 27 cmt. c (1981) ……………………………………... 5

# **PRELIMINARY STATEMENT**[1]

Plaintiffs erroneously contend that they can evade issue preclusion merely by alleging repetitive claims that arose after the dismissal in Turner v. Davis Selected Advisers, L.P., Civ. No. 08-421 (D. Ariz. June 1, 2011), or by offering additional evidentiary allegations that the Turner plaintiff could have raised.  They cannot.  Instead, Plaintiffs must point to a change in the controlling facts under the legal standards applicable to a § 36(b) claim.  They have failed to do so.  Plaintiffs' further contention that § 36(b) is a non-derivative cause of action essentially immune from preclusion is foreclosed by Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt., 595 F.3d 86, 96–98 (2d Cir. 2010) and numerous other cases in this Circuit.

The Complaint also fails to state a claim under the standards set forth in Amron v. Morgan Stanley Inv. Advisors Inc., 464 F.3d 338, 340, 342, 344 (2d Cir. 2006) and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Plaintiffs' Opposition relies overwhelmingly on unpublished district court decisions from other circuits that applied a more lenient pleading standard, addressed distinct allegations, and did not consider key arguments raised by Defendants here.  The Complaint's allegations comparing advisory and subadvisory fees—the linchpin of Plaintiffs' case—are impermissibly conclusory and implausible.  Even setting that aside, Plaintiffs do not dispute that the advisory/subadvisory comparison is insufficient by itself to support their § 36(b) claim.  See Jones v. Harris Assoc. L.P., 559 U.S. 335, 350 n.8 (2010).  And Plaintiffs' remaining allegations are insufficient boilerplate assertions, most of which have been explicitly rejected by cases in this Circuit and Turner.

Finally, the Opposition barely attempts to defend Plaintiffs' defective § 47(b) claim.

---

[1]  Defendants' Motion to Dismiss (dckt. no. 59, filed March 9, 2015) will be referred to as the "Motion." Defendants' Memorandum in Support of the Motion (dckt. no. 60, filed March 9, 2015), will be referred to as the "Memorandum" or "Mem."  Plaintiffs' Opposition to the Motion (dckt. no. 63, filed April 15, 2015) will be referred to as the "Opposition" or "Opp."  Otherwise, this reply uses the same defined terms as the Motion.

**ARGUMENT**

I. **THE TURNER DISMISSAL PRECLUDES THIS ACTION**

This case and Turner involve the same issue: whether the Fund's advisory fee is legally excessive. See Mem. 1, 8-10. The Opposition fails to rebut this straightforward conclusion.[2]

Plaintiffs make no effort to argue that the "costs and benefits to the advisor" are now "more favorable to the advisor" than they were in Turner. See Gartenberg v. Merrill Lynch Asset Mgmt. Inc., ("Gartenberg II") 573 F. Supp. 1293, 1299 (S.D.N.Y. 1983), aff'd Gartenberg v. Merrill Lynch Asset Mgmt., Inc., 740 F.2d 190 (2d Cir. 1984). Indeed, Plaintiffs do not dispute that the advisory fee rate now is lower than it was in Turner, and, according to the Complaint, what Plaintiffs erroneously label "fall out benefits" (fees received from the Subadvised Funds) are now lower also. See Mem. at 8, 19 n.31. Notwithstanding Plaintiffs' assertion, Opp. 28 n.21, there is no resemblance to Gartenberg II, where the advisor's expenses declined while its compensation increased by 25%. To the contrary, compensation to Davis from the Fund has ***decreased significantly*** in absolute terms since Turner.[3]

---

[2] Although, as Plaintiffs contend, Defendants bear the initial burden of showing apparent factual similarity between the two actions, Opp. 25, "[t]he burden of defeating preclusion by showing relevant factual differences should then be cast on the party opposing preclusion." 18 Charles A. Wright, Arthur R. Miller et al., Federal Practice and Procedure § 4425 at 659, 663 (3d ed. 2002). Regardless of who bears the burden, it is clear on the face of the relevant pleadings, opinions, and other matters of which the Court may take notice that the issue is the same.

[3] See Annual Reports for the Davis New York Venture Fund, Inc., which were filed with the Securities and Exchange Commission on the dates listed. Unless otherwise noted, each report is for the period ending July 31 of the year filed. Each file was last accessed May 7, 2015. Form N-CSRS for reporting period ending January 31, 2015 (filed April 2, 2015) at 13 (advisory fee for semiannual period ended Jan. 31, 2015 was $48,866,395 or $97,732,790 on an annualized basis), available at
https://www.sec.gov/Archives/edgar/data/71701/000007170115000024/dnyvf_drf_ncsrs_0115.htm;
Form N-CSR (filed Oct. 3, 2014), ECF No. 59-38 (Ex. JJ) at 15.  ($101,955,292 advisory fee);
Form N-CSR (filed Oct 9, 2012), at 15 ($122,109,753 advisory fee), available at
https://www.sec.gov/Archives/edgar/data/71701/000007170112000024/dnyvf_drfncsr.htm;
Form N-CSR (filed Oct 7, 2011), at 15 ($158,097,624 advisory fee), available at
https://www.sec.gov/Archives/edgar/data/71701/000007170111000025/dnyvf_drfncsr.htm;
Form N-CSR (filed Oct 7, 2010), at 17 ($158,222,172 advisory fee), available at
https://www.sec.gov/Archives/edgar/data/71701/000007170110000045/dnyvf_drfncsr.htm;
Form N-CSR (filed Oct 9, 2009), at 21 ($146,109,597 advisory fee), available at
https://www.sec.gov/Archives/edgar/data/71701/000007170109000029/dny_drf0709ncsr.htm;

Citing minor purported factual differences, Plaintiffs nonetheless labor to distinguish this case from Turner. See Opp. 26-27. But it is **not** the law that plaintiffs can circumvent issue preclusion merely by pointing to any change in the facts. Such a lax "every day is a new day" approach "could totally undermine the application of collateral estoppel." Ramallo Bros. Printing, Inc. v. El Día, Inc., 490 F.3d 86, 90, 91 (1st Cir. 2007) (citations and internal quotation marks omitted). Instead, to defeat issue preclusion, the differences between the first and second cases must, under the legal rules that govern the outcome, "amount to controlling facts." Id. at 90–91 (citation and internal quotation marks omitted).[4] There are no such controlling facts.

Plaintiffs' contention that this case involves a different time period, Opp. 26, is both factually flawed and legally insignificant. Plaintiffs contend that Turner "challenged fees charged to the Fund in 2007–2008," whereas the current lawsuit purportedly targets fees beginning in 2013. Opp. 26. In fact, the plaintiff in Turner filed an amended complaint in April 2009, and (over Defendants' objection) the Turner court granted plaintiff Turner's request to treat that amended pleading as covering the time period "through the present" (i.e., until June 2011). See Turner v. Davis Selected Advisers, L.P., Civ. No. 08-421 (D. Ariz. June 1, 2011), ECF No. 80 (order of dismissal) (Decl. Ex. CC); ECF No. 109 (March, 19, 2013) (Decl. Ex. DD), at 4, 6. More fundamentally, while *claim preclusion* generally does not apply to claims arising subsequent to a prior action, the mere passage of time does not defeat *issue preclusion*.

---

Form N-CSR (filed Oct 9, 2008), at 21 ($223,481,974 advisory fee), available at https://www.sec.gov/Archives/edgar/data/71701/000007170108000031/dnyv_drf0708nscr.htm;
Form N-CSR (filed Oct. 5, 2007), at 23 ($211,054,429 advisory fee), available at https://www.sec.gov/Archives/edgar/data/71701/000007170107000024/dnyvf_ncsr0707.htm.
The initial complaint in Turner was filed on July 28, 2008, and § 36(b) limits potential damages to a one-year look back period. See 15 U.S.C. § 80a-35(b)(3).

[4]   See also Benjamin v. Coughlin, 905 F.2d 571, 576 (2d Cir. 1990) ("'substantial overlap' of evidence and arguments" supported issue preclusion) (citing Restatement (Second) of Judgments § 27 cmt. c (1982)); 18 Charles A. Wright, Arthur R. Miller et al., Federal Practice and Procedure, § 4417 (3d ed. 2002) (issue preclusion applies "where the changed circumstances are not material, and therefore do not amount to controlling facts" id. at 428).

See Storey v. Cello Holdings, L.L.C., 347 F.3d 370, 383, 387 (2d Cir. 2003); NLRB v. United Techs. Corp., 706 F.2d 1254, 1260 (2d Cir. 1983). "[A] plaintiff cannot avoid the bar of collateral estoppel simply by suing a defendant for continuing the same conduct that was found to be lawful in a previous suit brought by the same plaintiff." Ramallo Bros., 490 F.3d at 91 (collecting cases). Plaintiffs' erroneous suggestion to the contrary is based on cases applying a distinct rule for claim preclusion, not issue preclusion.[5]

Plaintiffs' additional allegations regarding the Fund's recent performance do no rise to the level of a change in the controlling facts. To a significant extent, Plaintiffs' performance allegations do not involve new facts at all. See, e.g., Compl. ¶¶ 86, 89 (allegations regarding Fund's performance beginning in 2004). In any event, as Defendants demonstrated in the Memorandum, and as further discussed below in Section II.B., both Turner and Amron hold that a few years of performance allegations such as Plaintiffs have added are of little or no probative value in a § 36(b) case. See Mem. 7, 17–19; Mem. 23–24.

Plaintiffs fare no better with their argument that, because Turner was decided on a motion to dismiss, issue preclusion is defeated by Plaintiffs' additional allegations comparing the fees that Davis charges the Fund for advisory services and the fees charged the Subadvised Funds for subadvisory services. Opp. 26–27. As demonstrated by numerous cases cited in the Memorandum, issue preclusion clearly applies to 12(b)(6) dismissals, and Plaintiffs cannot avoid it by raising additional allegations based on facts (like fee comparisons with the Subadvised

---

[5] See Opp. 26, 27 n.18 citing Lawlor v. Nat'l Screen Serv. Corp., 349 U.S. 322, 323, 326, 327 (1955), Harkins Amusement Enters., Inc. v. Harry Nace Co., 890 F.2d 181, 183 (9th Cir. 1989), and Li v. Asphalt Green, Inc., 581 F. App'x 6, 7 (2d Cir. 2014) (summary order). Lawlor turned on "the doctrine of *res judicata*" and involved "[n]o question of collateral estoppel," id. at 326. The portion of Harkins on which Plaintiffs rely likewise addressed only claim preclusion; the court elsewhere affirmed the application of issue preclusion to later arising claims. 890 F.2d at 183. Li mentions both types of preclusion, but the preclusion discussion on which Plaintiffs rely cites only Lawlor and Storey, which (as already noted) carefully distinguish between issue and claim preclusion in this context. See Li, 581 F. App'x. at 7.

Funds) that were readily available in public documents at the time of the prior action. See Arduini ex rel. Int'l Game Tech. v. Hart, 774 F.3d 622, 630 (9th Cir. 2014) ("issue preclusion would almost never apply" if "subsequent plaintiffs could add more allegations (or more specific allegations)… and then claim there was no identity of issues").[6] Plaintiffs dismiss the cases that Defendants cite as actions "'seeking a second bite at the apple' to plead demand futility (not applicable to § 36(b) claims) based on facts that could have been asserted in the earlier suit." Opp. 27. But, in fact, Plaintiffs seek a "second bite at the apple" as they attempt to plead excessive fees based on facts that could have been alleged in Turner.

Plaintiffs apparently concede that rulings in a derivative case bind other shareholders, who are in privity for purposes of preclusion.[7] But relying on Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 542 (1984), they nonetheless contend that § 36(b) cases "are not derivative actions." Opp. at 28–30. This misinterpretation of Daily Income Fund was explicitly rejected in Operating Local 649 Annuity Trust Fund, 595 F.3d at 96–98.[8] There, discussing Daily Income

---

[6] See also Mem. 9–10 & n.18 (citing several cases, all of which, like this case, involved prior decisions on 12(b)(6) motions); Restatement (Second) of Judgments § 27 comment c (1981) ("[I]f the party against whom preclusion is sought did in fact litigate an issue of ultimate fact and suffered an adverse determination, new evidentiary facts may not be brought forward to obtain a different determination of that ultimate fact."). Plaintiffs do not contend that the facts they rely on to support their advisory/subadvisory comparisons were unavailable during the pendency of Turner. Plaintiffs only indicate that they had to look up certain information applicable to these allegations in public documents other than the Fund's filings. Opp. 27 n.17. And notwithstanding Plaintiffs' erroneous suggestion, (Opp. 27 n.17), the Turner plaintiff attempted to plead in conformity with the Gartenberg standard that Jones adopted, and elected to stand on his pleadings after Jones was issued. See Turner v. Davis Selected Advisers, L.P., Civ. No. 08-421 (D. Ariz. June 1, 2011), ECF No. 80 (Decl. Ex. CC) at 13–17; ECF No. 109 (March 19, 2013) (Decl. Ex. DD) at 4.

[7] See Mem. 10 & n.18 (collecting cases involving motions to dismiss). Plaintiffs cite Richards v. Jefferson County, Ala., 517 U.S. 793, 801 (1996), Opp. 30, even though the prior action in Richards was not a derivative, class, or representative action, 517 U.S. at 801, and "privity in the derivative litigation context presents an atypical situation" in that "a plaintiff shareholder sues on behalf of the corporation" and "the true plaintiff… is the identical corporation." Henik ex rel. LaBranche & Co., Inc. v. LaBranche, 433 F. Supp. 2d 372, 380 (S.D.N.Y. 2006).

[8] In a footnote, Opp. 28–29 n.22, Plaintiffs make a cryptic and meritless attempt to distinguish Operating Local 649, but fail to mention its discussion of Daily Income Fund. Plaintiffs observe that two cases cited by Defendants recognizing that § 36(b) cases are like other derivative actions for preclusion purposes—Lerner v. Reserve Mgmt. Co., No. 80 Civ. 1238, 1981 WL 1641, at *2 (S.D.N.Y. June 17, 1981) and Ashare v. Brill, 560 F. Supp. 18 (S.D.N.Y. 1983)—involved settlements rather than (as here) a litigated outcome. Opp. 28-29 n.22. This

Fund, the Court of Appeals affirmed that, consistent with a long line of other cases in this Circuit,[9] while § 36(b) cases "are not derivative for purposes of Rule 23.1, they are derivative, in the general sense of the word because they are asserted on behalf of all shareholders and result in no direct benefit to the individual plaintiff shareholders." Id. at 98, (citation and internal quotation marks omitted). Therefore, § 36(b) claims "must be brought in a representative capacity," id. at 98, and "must be pled derivatively on behalf of the Funds." Id. at 96. And "if the shareholder can sue on the corporation's behalf, it follows that the corporation should be bound by the results of the suit in subsequent litigation even if different shareholders prosecute the suits." In re Sonus Networks, Inc. S'holder Deriv. Litig., 499 F.3d 47, 64 (1st Cir. 2007). Plaintiffs' contention that they are *not* proceeding in a derivative capacity *by itself* compels dismissal of the action. See Operating Local 649 Annuity Trust Fund, 595 F.3d at 96-98.

While evidently disagreeing with his litigation strategy, Plaintiffs do not argue and cannot demonstrate that the plaintiff in Turner was an inadequate representative of the Fund. This would require showing not merely that the plaintiff in Turner failed "to invoke all possible legal theories or to develop all possible resources of proof" but that the representation was "so

---

distinction is entirely unhelpful to Plaintiffs. A § 36(b) plaintiff can only enter into a settlement on behalf of the fund because she is entitled to litigate on behalf of the fund. Court approval is often sought in such settlements because the danger of collusion is higher in the settlement context than where (as in Turner) the case was contested and the court ruled on the parties' contentions. See Arduini, 774 F.3d at 637 ("[A] dismissal after a hearing on the merits is a binding adjudication of the corporate claim and precludes non-party stockholders from bringing a subsequent derivative suit based on the same cause of action."), quoting Papilsky v. Berndt, 466 F.2d 251, 259 (2d Cir.1972). Gartenberg II did not "reject" (Opp. 29 n.22) nor is it inconsistent in any way with the holdings of Lerner and Ashare that § 36(b) is derivative.

[9]     See Mem. 10 & n.19; Burks v. Lasker, 441 U.S. 471, 484 (1979) (§ 36(b) provides for "derivative suits"); Olmsted v. Pruco Life Ins. Co. of N.J., 283 F.3d 429, 433 (2d Cir. 2002) (§ 36(b) is "a private right of derivative action"); W. Inv. LLC v. DWS Global Commodities Stock Fund, Inc., 705 F. Supp. 2d 281, 284 (S.D.N.Y. 2010); In re Salomon Smith Barney Mut. Fund Fees Litig., 441 F. Supp. 2d 579, 596 (S.D.N.Y. 2006); Hoffman v. UBS-AG, 591 F. Supp. 2d 522, 538 (S.D.N.Y. 2008); In re Scudder Mut. Funds Fee Litig., No. 04–CV–1921 (DAB), 2007 WL 2325862, at *14 (S.D.N.Y. Aug. 14, 2007). In view of Circuit authority, Plaintiffs' reliance on Wicks v. Putnam Inv. Mgmt., LLC, No. Civ.A. 04-10988-GAO, 2005 WL 705360 (D. Mass. Mar. 28, 2005), Opp. 29, is unavailing.

grossly deficient as to be apparent to the opposing party." Arduini, 774 F.2d at 635 (citation and quotation marks omitted). Accordingly, it is only Plaintiffs' position that would raise due process issues, as it is "unfair to require defendants to relitigate" the same issue "every time a different shareholder files suit." Id. at 636–37; Henik, 433 F. Supp. 2d at 380 (similar).

## II. THE COMPLAINT FAILS TO STATE A § 36(b) CLAIM

Amron v. Morgan Stanley Inv. Advisors Inc., 464 F.3d 338 (2d Cir. 2006), "resolved the debate" for courts in this Circuit "as to what degree of factual specificity is required for a § 36(b) claim to survive a motion to dismiss." Mintz v. Baron, No. 05 Civ. 4904 (LTS), 2009 WL 735140, at *2 (S.D.N.Y. Mar. 20, 2009) (citation and internal quotation marks omitted). Amron requires significant factual specificity and examination of each Gartenberg factor. See id.; Mem. 11. Plaintiffs nonetheless chiefly rely on a number of out-of-Circuit district court cases denying motions to dismiss § 36(b) claims. See Opp. 9–10, 11–17.[10] These cases apply a less rigorous pleading standard inconsistent with Amron. Even under this generous approach, several find that allegations similar to those in this case barely passed muster.[11] And there are key differences between the allegations and arguments before the Court and those addressed in Plaintiffs' cases.

---

[10] Plaintiffs cite In re Goldman Sachs Mut. Funds Fee Litig., No. 04 Civ. 2567, 2006 WL 126772, at *9 (S.D.N.Y. Jan. 17, 2006) for the pleading standard. Opp. 9. Goldman Sachs correctly dismissed a § 36(b) claim. But contrary to its use of the disjunctive, Plaintiffs must allege **both** that the fees "bear no reasonable relationship to the services rendered **and** could not have been the product of arm's length bargaining." Jones, 559 U.S. at 346 (emphasis added). See also Amron, 464 F.3d at 344. The Opposition (at pp. 14–15) also mentions the portion of R. W. Grand Lodge of F. & A.M. of Penn. v. Salomon Bros. All Cap Value Fund, 425 F. App'x 25 (2d Cir. 2011) that Defendants previously distinguished (see Mem. 11 n.21). See Opp. 14–15. Plaintiffs fail to mention that Grand Lodge affirmed the salient portion of the district court's ruling—its dismissal of § 36(b) claims for advisory fees. 425 F. App'x at 30. Plaintiffs state that Amron found that the plaintiffs "failed to allege any facts pertinent to th[e] relationship between fees and services." Opp. 19. As here, the Amron plaintiffs *purported* to allege facts relating to several Gartenberg factors, but those allegations were not "sufficient to establish liability." Amron, 464 F.3d at 344.

[11] See, e.g., Reso v. Artisan Partners Ltd. P'ship, No. 11-CV-873-JPS, 2011 WL 5826034, at *6 (E.D. Wis. Nov. 18, 2011) (many allegations "slip[ped] in by the skin of [their] teeth"); Goodman v. J.P. Morgan Inv. Mgmt., Inc., No. 2:14-cv-414, 2015 WL 965665, at *5 (S.D. Ohio Mar. 4, 2015) (court rejects motion to dismiss, although it was "perhaps a close call in some respects."); In re BlackRock Mut. Funds Advisory Fee Litig., Civ. No. 14-1165 (FLW)(DEA), 2015 WL 1418848, at *8 (D.N.J. Mar. 27, 2015) (denying motion to dismiss but recognizing that Plaintiffs' "evidence [of excessive fees] is not overwhelming"); Zehrer v. Harbor Capital Advisors, Inc., No. 14 C 789, 2014 WL 6478054, at *4 (N.D. Ill. Nov. 18, 2014) (denying motion to dismiss, but noting that "it is far from

### A. Plaintiffs' Comparative Fee Allegations Are Inapt and Insufficient to State a Claim

#### 1. Advisory Fees and Subadvisory Fees Are Not Comparable

Plaintiffs unquestionably plead that Davis furnished *subadvisory* (portfolio management) services to both the Fund and the Subadvised Funds.  See Opp. 5–6, 11–12.  But they assert only in conclusory terms that the *overall* services Defendants provided the Fund and the Subadvised Funds are "the same" or "substantially the same."  See, e.g., Opp. 5, 11, 13; Compl. ¶¶ 5, 58.  As demonstrated in the Memorandum (at 12–15), Plaintiffs' repetition of such phrases does not meet their burden under Amron and Iqbal to plead a non-conclusory, plausible claim of similar overall services.[12]  Their inability to plead facts showing comparable services is understandable, as the SEC has effectively recognized in hundreds of exemptive orders and no-action letters (which Plaintiffs' authorities do not address), that the roles of advisor and subadvisor are distinct.  See Mem. 2–3, 14–15.

The Opposition asserts that Defendants' arguments about the distinct services they perform in advisory and subadvisory roles "flies in the face of the express terms of the Subadvised Funds' Agreements."  Opp. 16.  Plaintiffs ignore the contractual language Defendants cited in the Memorandum (at p. 13 & n.22), which explicitly provides that Defendants' role as subadvisor is "[g]enerally … limited to asset management and related recordkeeping services."  Decl. Ex. Y at 9.  See also Decl. Ex. F.

---

clear that [plaintiff] will be able to meet the high standard for liability under § 36(b)"); Sins v. Janus Capital Mgmt., LLC, No. 04-cv-01647, 2006 WL 3746130, at *3–4 (D. Colo. Dec. 15, 2006) (court "troubled" by general allegations, but felt bound, pre-Iqbal, to accept "generic" and "boilerplate" allegations that were merely "possible").

[12]     Twice, Plaintiffs allow that Defendants may have furnished the Fund additional services, but assert that "[a]ny other services, beyond investment advisory and administrative services, are provided pursuant to separate contracts."  Opp. 7.  See also Opp. 16.  Plaintiffs neither plead facts about nor identify these contracts.

8

Finally, and perhaps most significantly, the Opposition does not dispute and the Complaint acknowledges (at ¶¶ 75–76) that as advisor to the Fund (but not as subadvisor to the Subadvised Funds), Defendants furnish officers and management directors and employ the Fund's chief compliance officer.  See Mem. 13-14.  As noted in the Memorandum, this entails vast potential liability, and the Supreme Court in Jones cited with approval case law recognizing that the assumption of greater liability supports a higher fee.  Mem. 14.  Citing some of the same out-of-Circuit cases, Plaintiffs contend that Defendants' greater legal responsibility and risk as an investment advisor "raises an evidence-dependent contention." Opp. 16.  But none of the cited cases address the issue, and it is clearly appropriate on a motion to dismiss for the Court to consider statutes and regulations that trigger broad potential liability for investment advisors.

### 2. Plaintiffs' Inapt Fee Comparison Is Insufficient on Its Own Terms

Plaintiffs fail to rebut Defendants' showing that the Complaint fails to state a § 36(b) claim even if Plaintiffs' inapt comparison between advisory and subadvisory fees were credited.

First, Plaintiffs do not dispute that the Fund's advisory fee was essentially identical to that of the fee paid by another independent Davis client (the Clipper Fund).  See Mem. 16.  This alone demonstrates that the Fund's fee was within the arm's length range and thus cannot violate § 36(b).  See Mem. 16.  Plaintiffs do not contend that the initial contract between the Clipper Fund and Davis that expired in 2008,[13] reflected anything other than arm's length bargaining. Instead, Plaintiffs assert that, once the Clipper Fund selected Davis as advisor, the Clipper Fund also became a "captive" fund.  Opp. 17.  It is doubtful that the Clipper Fund could plausibly be characterized as a "captive" fund of Davis soon after its board demonstrated a willingness to replace the Clipper Fund's prior advisor.  But even assuming *arguendo* that only the Clipper

---

[13]    See Ex-23(D)(1) - Investment Advisory Agreement, "Term," p. 4, *available at* https://www.sec.gov/Archives/edgar/data/736978/000095013606003192/file3.htm (last accessed May 5, 2015).

9

Fund's initial advisory contract with Davis was the product of arm's-length bargaining, that is dispositive here. The Clipper Fund's advisory fee was essentially identical to the Fund's fee during the initial Clipper Fund contract with Davis, the 2007-2008 time period, just as it was when this lawsuit was filed.[14] Similarly, the differential between the Fund's fee and the Subadvised Funds' subadvisory fees was substantially the same during both the 2007-2008 time period and the 2013-2014 time frame.[15] As discussed above, any subsequent changes in the facts since the initial Clipper Fund contract only underscore that the Fund's fees cannot be excessive.

Second, Plaintiffs do not dispute that (as Turner recognized) the Fund's advisory fees are lower than those of other comparable funds. This factor merits some weight, and moves Plaintiffs' claims even further from the plausibility threshold. See Mem. 16–17.

Third, Plaintiffs do not dispute that they must allege facts showing excessive fees other than that the Fund paid higher fees than the Subadvised Funds. See Mem. 17. As demonstrated in the Memorandum (at pp. 17–24) and below, Plaintiffs have failed to do so.

### B. Plaintiffs' Allegations Regarding the Fund's Recent Underperformance Are of Limited Relevance and Ignore Davis's Long-Term Track Record

Plaintiffs observe that they have alleged "underperformance over the last ten years." Opp. 21. But as Defendant previously demonstrated, Turner rejected similar allegations, and the Second Circuit in Amron held that stronger allegations of 10-year underperformance merited little or no weight. See Mem. 17–19. Moreover, Plaintiffs do not dispute that the Fund

---

[14] See Ex-23(D)(1) - Investment Advisory Agreement, "Advisory Fee Schedule," pp. 7-8, *available at* https://www.sec.gov/Archives/edgar/data/736978/000095013606003192/file3.htm (last accessed May 5, 2015), which reflects a maximum fee of 65 basis points, which applies to the first $500M, at which point the first of eight breakpoints takes effect.

[15] See, e.g., Sub-Advisory Agreement between ING Life Insurance and Annuity Company and Davis Selected Advisers, L.P., dated October 31, 2005, reflecting a maximum sub-advisory fee of 43 basis points. *Available at* https://www.sec.gov/Archives/edgar/data/1039001/000110465907006453/a06-22780_7ex99dbd23.htm (last accessed May 7, 2015).

outperformed its benchmarks during certain recent periods.  See Mem. 7.  Plaintiffs' allegations regarding Defendants' performance in managing other funds are even further afield.  See Mem. 23-24.

Plaintiffs do not and cannot contest the fact that Davis's long-term track record has been extraordinary.  See Mem. 7, 19.  Their suggestion that long-term performance is less significant than results from shorter time periods (Opp. 21) is unsupported and contrary to common sense, the Fund's long term investment objective, Compl. ¶ 32, and FINRA's views.  See Mem. 19.  If anything, Davis's performance detracts from the plausibility of Plaintiffs' claims.

### C. Plaintiffs' Conclusory "Fall-Out" Benefit Allegations Add Nothing

Plaintiffs do not allege that Davis received excessive fees for its services to other funds (which fees Plaintiffs allege are significantly lower now than during Turner, see Mem. at 8, 19 n.31), and Plaintiffs acknowledge that they do not "attempt to state a claim on the basis that Davis is profitable."  Opp. 20 n.13.  Plaintiffs' fall-out benefits therefore do not advance their claims.  See Mem. 20; Turner v. Davis Selected Advisers, L.P., Civ. No. 08-421, at 15 (D. Ariz. June 1, 2011), at Decl. Ex. CC (Plaintiffs alleged that advisory fees were fall-out benefits, but "because Plaintiff does not adequately allege that either the 12b-1 or the advisory fee was excessive individually, the fall-out benefit argument fails").

### D. Plaintiffs' Allegations Regarding the Directors Are Irrelevant and Meritless

As demonstrated in the Memorandum: (1) in assessing a motion to dismiss a § 36(b) claim, the Second Circuit has recognized that the ICA *presumes* that non-affiliated directors "are disinterested" and "a plaintiff's burden to overcome this presumption is a heavy one."  Amron, 464 F.3d at 344 (citation and internal quotation marks omitted, emphasis added); Mem. 21; (2) allegations of an interested board affect only the degree of deference the Court should give the

board's decision, and thus even a § 36(b) plaintiff who offers allegations sufficient to overcome the presumption of disinterestedness is not relieved of the burden to allege facts that plausibly show legally excessive fees, Mem. 21; and (3) Plaintiffs' circular and/or boilerplate allegations, which could be made about nearly any mutual fund board, fail to overcome the presumption that the Fund's independent directors are disinterested, and thus the Court should accord significant deference to the Board's decision to approve the fees. Mem. 21–24.

Plaintiffs offer no response to the first point and apparently concede the second.[16] Thus, Plaintiffs' allegations of board interest cannot supply the "other evidence" of excessive fees that Jones requires. 559 U.S. at 350 n.8.

Regarding the third point, Plaintiffs rely principally on the same out-of-Circuit decisions. See Opp. 23 & n.14. It appears that none of these cases applied Amron's presumption of directorial disinterest or distinguished the reasoning in Turner[17] or Migdal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321 (4th Cir. 2001) (followed by Amron on multiple issues, 464 F.3d at 344–46), which reject the allegation that the Board's process was defective because (as the ICA contemplates) the Board relied on information from Davis. See Mem. 22-23.

### III. PLAINTIFFS' SECTION 47(b) CLAIM MUST BE DISMISSED

Plaintiffs concede that, if their § 36(b) claim is dismissed, their § 47(b) claim also fails. See Opp. 30; Mem. 24, point 1. Plaintiffs also offer no response to the holdings of Turner and other cases that, even if § 47(b) did afford a private claim or remedy for allegedly excessive fees, only the Fund—and not Plaintiffs—have standing to pursue it. Mem. 25, point 4.

---

[16] See Opp. at 23–24 (arguing that, if Plaintiffs' allegations are credited, the Court should apply "somewhat less deference," Opp. 23 n.14 (citation and internal quotation marks omitted) or "afford[] little deference," Opp. 24, to the Board's approval process").

[17] See Turner v. Davis Selected Advisers, L.P., Civ. No. 08-421, at 17 (D. Ariz. June 1, 2011), ECF No. 80 (Decl. Ex. CC) at 16–17.

Plaintiffs get the law backwards with respect to their argument regarding an implied rescission remedy, which the court need not address. Plaintiffs contend that § 36(b) "does not explicitly foreclose other equitable remedies." Opp. 30, citing Zehrer. But "affirmative evidence of congressional intent must be provided *for* an implied remedy, not against it." Alexander v. Sandoval, 532 U.S. 275, 293 n.8 (2001) (citation and internal quotation marks omitted). See also Olmsted v. Pruco Life Ins. Co. of New Jersey, 283 F.3d 429 (2d Cir. 2002).

Finally, contrary to Plaintiffs' argument, Opp. 30, it would be proper and efficient for the Court to narrow the case by dismissing or striking Plaintiffs' baseless request for rescission. See, e.g., Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 24–25 (1979) (allowing lawsuit to go forward insofar as it sought rescission but not damages).[18]

## CONCLUSION

The Complaint should be dismissed with prejudice.

Dated: May 8, 2015  
       New York, New York

Respectfully Submitted:

K&L GATES LLP

By: __/s/__ Stephen G. Topetzes_____

Jeffrey B. Maletta (*pro hac vice*)  
Stephen G. Topetzes (*pro hac vice*)  
Nicholas G. Terris  
Nicole A. Baker (*pro hac vice*)  
Amy J. Eldridge (*pro hac vice*)  
**K&L Gates LLP**  
1601 K Street NW  
Washington, D.C. 20006  
Tel: (202) 778-9000  
Fax: (202) 778-9100

---

[18] See also Reuben H. Donnelley Corp. v. Mark I Mktg. Corp., 893 F. Supp. 285, 291–94 (S.D.N.Y. 1995) (granting 12(b)(6) dismissal of contract counterclaim to the extent it alleged a fraud claim and to the extent it sought punitive damages); Gorbaty v. Wells Fargo Bank, N.A., No. 10-CV-3291 (NGG) (SMG), 2014 WL 4742509, at *26 (E.D.N.Y. Sept. 23, 2014) (dismissing claim insofar as it sought compensatory damages but not equitable relief).

Email: stephen.topetzes@klgates.com
jeffrey.maletta@klgates.com
nicholas.terris@klgates.com
nicole.baker@klgates.com
amy.eldridge@klgates.com

Joanna A. Diakos
Sarah Peck Kenney
**K&L Gates LLP**
599 Lexington Ave.
New York, NY 10022
Tel:    (212) 536-3900
Fax:   (212) 536-3901
Email: joanna.diakos@klgates.com
sarah.kenney@klgates.com

*Attorneys for Davis Selected Advisers, L.P., and Davis Selected Advisers-NY, Inc.*

14