UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x


In re DAVIS NEW YORK VENTURE FUND                    No. 14 CV 4318-LTS-HBP
FEE LITIGATION


--------------------------------------------------------x


MEMORANDUM OPINION AND ORDER

Plaintiffs, who are shareholders of the Davis New York Venture Fund (the

"Fund"),[1] bring suit on behalf of and for the benefit of the Fund under Section 36(b) of the

Investment Company Act of 1940 (the "1940 Act"), 15 U.S.C. §§ 80a-35(b) ("Section 36(b)"),

against Davis Selected Advisers, L.P. ("Davis Advisors") and Davis Selected Advisers-NY, Inc.

("Davis-NY," and together with Davis Advisors, "Defendants" or "Davis"), alleging that

Defendants charged excessive advisory fees to the Fund and thereby violated their fiduciary duty

as investment advisors.  This Court has subject matter jurisdiction of this action pursuant to 28

U.S.C. § 1331.

Defendants move to dismiss the Consolidated Amended Complaint ("Am.

Compl."), arguing that Plaintiffs are collaterally estopped from bringing their claims by the

decision rendered in Turner v. Davis Selected Advisers, L.P., No. 08 Civ. 421, slip op. (D. Ariz.

June 1, 2011), aff'd, No. 13-15742, 2015 WL 5692324 (9th Cir. Sept. 29, 2015), a prior Section

---

[1]     The plaintiff shareholders are: Gary A. and Deborah L. Hebda, who have
continuously owned shares in the Fund since at least February 2011; Saul and
Sylvia Chill, who have continuously owned shares in the Fund since at least July
2005; and Schuyler Hoffman, who has continuously owned shares in the Fund
since at least February 2005.

36(b) case against Davis that was dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), and that the complaint fails, in any event, to state a claim.

The Court has carefully considered the parties' submissions.  For the following reasons, Defendants' motion is denied.

<u>BACKGROUND</u>

The pertinent allegations of the Amended Complaint can be summarized as follows.  Defendants are investment advisors to the Fund and receive an annual fee from the Fund for providing investment advisory services, including the management of the Fund's portfolio of assets.  (Am. Compl. ¶ 3.)  As of March 31, 2014, the Fund had approximately $20.8 billion in assets under management.  (<u>Id.</u> ¶ 71.)

The Fund is an open-end management investment company, also known as a "mutual fund," registered under the 1940 Act.  (<u>Id.</u> ¶ 19.)  The Fund is organized as a series within Davis New York Venture Fund, Inc., a corporation organized under Maryland law.  (<u>Id.</u> ¶ 20.)  The Fund issues shares to investors, such as the Plaintiffs, who invest money in the Fund.  (<u>Id.</u> ¶ 22.)  Each share represents, and may be redeemed for, a pro rata interest in the Fund's underlying portfolio of securities, less any fees and other liabilities.  (<u>Id.</u>)  The Fund does not have any employees of its own, and conducts its operations through external providers pursuant to contracts with the Fund.  (<u>Id.</u> ¶ 23.)  Defendants, as the Fund's investment advisors, are responsible for managing the Fund's portfolio of securities, including researching potential investments and deciding which securities will be purchased for or sold from the portfolio.  (<u>Id.</u> ¶ 24.)  The Fund is overseen by a Board of Directors (the "Board"), which is responsible for selecting and monitoring the Fund's service providers.  (<u>Id.</u> ¶ 26.)

Plaintiffs assert that Defendants have breached their fiduciary duty to the Fund by charging excessive investment advisory fees.  They allege that the advisory fees charged to the Fund by Defendants are significantly in excess of the fees Defendants have negotiated with third parties for the provision of substantially similar services in a subadvisory capacity.  (See id. ¶ 47-79.)  Plaintiffs also cite the Fund's low performance relative to certain benchmarks and the performance of other funds over recent periods as an indication that Defendants' advisory fees are disproportionate to the quality of the services provided.  (Id. ¶¶ 7-8, 83-95.)  Plaintiffs further allege that the Fund's Board has failed to properly negotiate and oversee the fees paid for Defendants' services.  (See id. ¶¶ 100-109.)

Defendants serve pursuant to an Investment Advisory Agreement between Davis Advisors and the Fund (the "IAA") and a subadvisory agreement between Davis Advisors and Davis-NY.  (Id. ¶ 28.)  The IAA requires Davis to provide certain investment advisory services to the Fund, including researching potential investments, deciding which securities to buy and sell for the Fund's portfolio, and executing purchase and sale orders on behalf of the fund.  (Id. ¶ 29.)  The IAA requires Davis to maintain certain books and records and to report to the Board regarding its services.  (Id. ¶ 30.)  The Fund's investment objective is the "long-term growth of capital" and it invests "principally in common stocks . . . issued by large companies with market capitalizations of at least $10 billion."  (Id. ¶¶ 32-33.)  Davis employs certain investment strategies to manage the Fund, as described in the Fund's 2012 and 2013 prospectuses, which center on identifying businesses with long-term value and more intrinsic value than their trading value.  (See id. ¶¶ 34-35.)  Davis has developed a list of characteristics of companies that it believes will fulfill its investment strategy: first class management, strong financial condition and satisfactory profitability, and strong competitive positioning.  (Id. ¶ 35.)   The Large Cap

Value Team at Davis, consisting of portfolio managers, research analysts, and traders, is responsible for providing investment advisory services to the Fund.  (Id. ¶ 36.)

Defendants also provide or have provided investment advisory services to certain other mutual funds as "subadvisor" ("Subadvised Funds").  (Id. ¶¶ 48-49.)  Each of the Subadvised Funds is organized and sponsored by an independent financial institution, which nominally serves as the Subadvised Fund's investment advisor and subcontracts with Davis to provide investment advisory services to the Subadvised Fund.  (Id. ¶¶ 51, 55-56.)  Pursuant to the subadvisory agreements between Davis and each of the financial institution sponsors, Davis acts or acted as subadvisor, providing investment advisory services in exchange for a fee paid by the sponsors.  (Id. ¶¶ 56, 57.)  Plaintiffs allege that the subadvisory agreements require Davis to provide substantially the same types of investment advisory services to the Subadvised Funds as it provides to the Fund under the IAA, including coordination of investment and reinvestment of the assets, determination of the composition of assets, arrangement of the purchase and sale of securities on behalf of the Subadvised Funds, maintenance of books and records, and reporting to the board of directors and/or financial sponsors regarding Davis' services.  (See id. ¶¶ 59-60.) Plaintiffs also allege that Davis' Large Cap Value Team manages or managed each Subadvised Fund's investment portfolio.  (Id. ¶ 61.)  The accounts of other clients of the Large Cap Value Team, such as the Subadvised Funds, are "patterned after" the Fund, and the Large Cap Value Team aggregates the trading for the Fund and Subadvised Funds, purchasing and selling the same securities for both except "[i]n unusual circumstances."  (Id. ¶ 64.)  According to Plaintiffs, Davis uses or used the same or substantially the same investment strategies in managing the Subadvised Funds as those described in the Fund's 2012 and 2013 prospectuses.  (See id. ¶ 67.) The same or substantially the same legal, compliance, and administrative personnel are,

likewise, responsible for ensuring that Davis' investment advisory and subadvisory services comply with applicable law, for maintaining books and records relating to Davis' provision of investment advisory services to the Subadvised Funds, and for assisting with reports about Davis' investment advisory services.  (See id. ¶ 69.)  These personnel use substantially the same systems, technology, and other resources in performing those tasks for the Subadvised Funds that they use for the Fund.  (Id.)

Plaintiffs allege that, although Davis provides or provided substantially the same services to certain Subadvised Funds, the fees charged to those funds are lower than those charged to the Fund.  (Id. ¶ 70.)  Specifically, the following blended rates were charged to each fund:[2]

| Fund | Effective Rate (at $20.8B in AUM) | Annual difference in fees paid (at $20.8B AuM) |
|------|-----------------------------------|-----------------------------------------------|
| Davis New York Venture Fund | 0.50% | |
| Columbia Subadvised Fund | 0.2550% | $51,410,000 |
| MetLife Subadvised Fund | 0.3007% | $41,922,500 |
| ING Subadvised Fund | 0.3007% | $41,922,500 |
| Hancock Subadvised Fund | 0.3013% | $41,785,000 |
| AXA Subadvised Fund | 0.3514% | $31,365,000 |
| Allianz Subadvised Fund | 0.3514% | $31,360,000 |

(Id. ¶ 71.)  Plaintiffs allege that the higher fees paid by the Fund pursuant to the IAA are not justified by any additional services provided to the Fund by Defendants or their affiliates.  (Id. ¶

---

[2]     The Amended Complaint also sets out specific breakpoint schedules for each fund.  (Id. ¶¶ 44, 71.)

73.)   Specifically, Plaintiffs allege that any additional personnel expenses associated with the advisory role are de minimis (see id. ¶ 75), and that additional services provided by Davis to the Fund beyond investment advisory services are provided and paid for pursuant to contracts separate from the IAA, for additional compensation (see id. ¶ 74.)  Plaintiffs characterize Defendants' subadvisory fee arrangements and fees received from other clients of the Large Cap Value team, whose investments are patterned after those of the Fund, as "fall-out benefits" contributing to the excessiveness of Davis' compensation as a whole.  (See id. ¶ 80-82.)

Plaintiffs also allege that the fees paid to the Fund under the IAA are not negotiated at arm's length because the Board members rely on information and analyses prepared by Davis to support those fees and have not considered information or analyses reflecting the interests of the Fund or its shareholders.  (See id. ¶¶ 101-104.)  According to Plaintiffs, the Board has not negotiated a lower fee, solicited proposals from other advisors, or taken action to address the Fund's poor performance.  (Id. ¶¶ 106-109.)  Plaintiffs allege that, by contrast, the financial institution sponsors of the Subadvised Funds negotiate at arm's length with Davis concerning their fees, conduct a competitive selection process and replace advisors like Davis, because the sponsors retain as profit any portion of the investment advisory fees that remain after Davis is paid.  (See id. ¶ 110-18.)  The Fund has allegedly suffered millions of dollars in damages due to the payment of excessive investment advisory fees to Davis.  (Id. ¶ 121.)

<u>DISCUSSION</u>

Defendants assert that Plaintiffs' claims must be dismissed because they are precluded by the dismissal of an earlier, similar lawsuit, or because the Amended Complaint fails to state a claim upon which relief may be granted.

<u>Preclusion</u>

The 1940 Act regulates investment companies, including mutual funds.  Section 36(b) of the Act imposes upon investment advisors a "fiduciary duty" with respect to compensation received from a mutual fund, and grants individual investors a private right of action "on behalf of such company" for breach of that duty.  <u>See</u> 15 U.S.C. § 80a-35(b); <u>Jones v. Harris Associates L.P.</u>, 559 U.S. 335, 340 (2010).  A cause of action under Section 36(b) is brought by a fund shareholder for the benefit of the fund, with any recovery going to the company, rather than for the benefit of any individual shareholder.  <u>See Operating Local 649 Annuity Trust Fund v. Smith Barney Mgmt.</u>, 595 F.3d 86, 96-97 (2d Cir. 2010).  Although Section 36(b) does not permit an investment company to bring such an action itself, Section 36(b) suits are nonetheless "derivative, in the general sense of the word, because they are asserted on behalf of all shareholders and result in no direct benefit to the individual plaintiff shareholders."  <u>Id.</u> at 98 (citation and internal quotation marks omitted).

Defendants argue that Plaintiffs are precluded from litigating the question of whether Defendants' fees are excessive by the dismissal of an earlier Section 36(b) action against the Fund.  In <u>Turner v. Davis Selected Advisers, L.P.</u>, No. 08 Civ. 421, slip op. (D. Ariz. June 1, 2011), Plaintiffs alleged that Defendants charged excessive fees to the Fund during a one-year period beginning in 2007.  The court found that the <u>Turner</u> plaintiff's conclusory allegations concerning board diligence, underperformance in relation to mutual funds pursuing

different investment strategies, and disparities in fees charged to other mutual funds, without alleging facts demonstrating that the services and strategies provided to the other funds were similar, were insufficient to state plausibly the Section 36(b) cause of action.  The dismissal was recently affirmed by the Ninth Circuit.  Turner v. Davis Selected Advisers, L.P., No. 13-15742, 2015 WL 5692324 (9th Cir. Sept. 29, 2015).

Issue preclusion, also known as collateral estoppel, "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated by the same parties in a future lawsuit."  Schiro v. Farley, 510 U.S. 222, 232 (1994) (citation omitted).  Collateral estoppel "applies when (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits."  Ali v. Mukasey, 529 F.3d 478, 489 (2d Cir. 2008) (citation and internal quotation marks omitted).

The Turner plaintiff brought suit on behalf of the Fund and the lawsuit was designed to benefit all Fund shareholders: the Turner plaintiff was thus arguably in privity with at least some of the Plaintiffs here.  However, Defendants' preclusion arguments fail because the issue sought to be litigated here was not decided by the Turner court.  The Turner court evaluated the sufficiency of the complaint in that case, finding that it lacked the factual allegations necessary to plausibly demonstrate that Davis' fees were excessive.  That court did not rule on the question of whether Davis' advisory fees were, in fact, excessive.  The latter question is presented by the complaint currently before this Court, in relation to fees received by Davis in 2013 and subsequent years—a period that postdates the dismissal of the Turner complaint.  Accordingly, Defendants' motion is denied to the extent it seeks the dismissal of the

instant case on the basis of issue preclusion.  The Court turns to the question of the sufficiency of

the instant complaint.

Sufficiency of the Complaint

 To survive a motion to dismiss, a complaint must contain "sufficient factual

matters, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007)).  The court accepts the factual allegations in the complaint as true and draws all

reasonable inferences in the plaintiff's favor, Steginsky v. Xcelera, 741 F.3d 365, 368 (2d Cir.

2014) (citation omitted), but "mere conclusions" are "not entitled to the assumption of truth,"

Iqbal, 556 U.S. at 664.  The plausibility standard requires plaintiffs to show that success on the

merits is more than "a sheer possibility," though it is not a "probability requirement."  Iqbal, 556

at 678-79 (citation omitted).

 In Jones, the Supreme Court set forth the standard for establishing liability under

Section 36(b): the plaintiff must prove that "an investment advisor . . . charge[d] a fee that is so

disproportionately large that it bears no reasonable relationship to the services rendered and

could not have been the product of arm's-length bargaining."  559 U.S. at 346.  In adopting that

standard, the Supreme Court cited the Second Circuit decision in Gartenberg v. Merrill Lynch

Asset Mgmt., Inc., 694 F.2d 923, 928 (2d Cir. 1982), as "correct" in holding that "all relevant

circumstances" must be considered when determining Section 36(b) liability.  Id. at 346-47.[3]

---

[3]  The Gartenberg Court specifically identified several factors for consideration in
weighing "all pertinent" facts: (1) the nature and quality of services provided to
the fund shareholders; (2) the profitability of the fund to the advisor-manager; (3)
fall-out benefits; (4) economies of scale; (5) comparative fee structures; and (6)
the independence and conscientiousness of the trustees.  649 F.2d at 929-32

Such an evaluation must take into account both procedure and substance, such as a Board of Directors' independence and process, as well as the outcome of the fee negotiations.  See id. at 351-52.  Moreover, the Jones Court specifically disclaimed the notion that "there can be any categorical rule regarding the comparisons of the fees charged different types of clients . . . . Instead, courts may give such comparisons the weight that they merit in light of similarities and differences between the services that the clients in question require, but courts must be wary of inapt comparisons."  Id. at 349-50 (citing Daily Income Fund., Inc. v. Fox, 464 U.S. 523, 537 (1984)).  In short, "[i]f the services rendered are sufficiently different that a comparison is not probative, then courts must reject such a comparison."  Id. at 350.

Defendants argue that Plaintiffs have made an "inapt comparison" between the fees Davis charges as Fund advisor and those it charges to other funds for subadvisory services because advisors have a wider range of responsibilities and potential liabilities.  Plaintiffs argue that the subadvisory fees are a benchmark of the true market value of the advisory services, since those fees are negotiated at arm's length with financial institution sponsors who have an incentive to maximize their own compensation, which is tied to the amount that remains after subadvisory fees are paid.  Plaintiffs specifically allege that the services provided in the subadvisory capacity are substantially similar to those Davis provides as advisor to the Fund, citing descriptions of the advisory services, investment strategies, and relevant personnel in disclosure documents for the respective funds.

Factual support for Defendants' contention that advisor fees are not aptly compared to subadvisory fees is not apparent on the face of the Amended Complaint or in the disclosure documents referenced therein.  Indeed, Plaintiffs affirmatively allege that Defendants provide their additional services to the Fund pursuant to separate contracts and for separate

compensation, and that any additional services that are not separately compensated are not materially significant additional cost items for Defendants.[4]  These allegations, taken together with Plaintiffs' showing of fee disparities and their allegations that the services provided at the disparate fee levels are substantially similar and the total compensation is excessive are sufficient, when taken as true for purposes of this motion practice, to state plausibly Plaintiffs' Section 36(b) claims.[5]  Although Defendants may ultimately be able to demonstrate that Plaintiffs' subadvisory fee benchmark is inapt, the issue is not ripe for resolution on the pleadings.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Consolidated Amended Complaint is denied.  This Memorandum Opinion and Order resolves docket entry number 58.

---

[4]     Defendants cite Hoffman v. UBS-AG for the propositions that "[i]nvestment advisors and subadvisors perform distinct services," and these "differences . . . alone justify" different fee arrangements.  591 F. Supp. 2d 522, 540 (S.D.N.Y. 2008).  Defendants' reliance on Hoffman is misplaced.  There, the "complaint acknowledge[d] [that] . . . investment advisers and subadvisers perform distinct services."  Id. at 540.  Plaintiffs' position here is to the contrary.

[5]     Numerous other courts have refused to dismiss complaints on similar allegations to the ones made here.  See, e.g., In re Blackrock Mut. Funds Advisory Fee Litig., No. 14 Civ. 1165,  2015 WL 1418848, *5-6 (D.N.J. Mar. 27, 2015); Goodman v. J.P. Morgan Inv. Mgmt., Inc., No. 2:14 Civ. 414, 2015 WL 965665, at *4 (S.D. Ohio Mar. 4, 2015); Zehrer v. Harbor Capital Advisors, Inc., No. 14 Civ. 789, 2014 WL 6478054, at *2 (N.D. Ill. Nov. 18, 2014).

The parties are directed to consult and to prepare an updated submission in advance of the December 17, 2015 pretrial conference, in accordance with the initial conference order, (docket entry no. 4.)


SO ORDERED.

Dated: New York, New York
          November 18, 2015

                                              ___s/ Laura Taylor Swain___
                                              LAURA TAYLOR SWAIN
                                              United States District Judge